## FERGUSON v DEUBLE

Ohio Appeals, 7th Dist, Mahoning Co

No 2449. Decided 1938

534

Henderson, Wilson, Wyatt & Ranz, Youngstown, for plaintiff-appellee.

H. H. Hunt, Youngstown, and Vern Thomas, Youngstown, for defendant-appellant.

### OPINION

By BENNETT, J.

Margaret C. Ferguson, the plaintiff-appellee, sued the defendant-appellant in the Court of Common Pleas, alleging in her fifth amended petition that she was the owner of a one-half interest in a "joint and survivorship" account in The Home Savings & Loan Company, of Youngstown, of the approximate amount of $15,280 which stood in the names of herself and of Cecelia Deuble; that the defendant-appellant Ralph Deuble, had secured the addition of his name to the account, although not the owner of any part of it; that on March 10th, 1934, said defendant withdrew the entire balance in the account and deposited it in an account in his own name only; that Cecelia Deuble died on April 6th, 1934; that the defendant, Ralph Deuble, had

withdrawn $10,000 from the personal account in his own name but that some $5,000 still remains in the account; and asks that the defendant, Ralph E. Deuble, be compelled to account to her for all of her said funds withdrawn by him and to hold the balance remaining in the account as trustee of the same for the plaintiff's benefit.

In his answer to the fifth amended petition, defendant, Ralph E. Deuble, says as a first defense that the petition fails to state a cause of action against him and then, upon the merits of the claim, denies that the plaintiff ever contributed any funds whatever to the bank account in question, denies that she ever had any beneficial interest in any part of the account, says that he was the exclusive owner of the funds in the account accumulated over the years in numerous business enterprises of his, that he had never intended to convey to his wife or to the plaintiff any interest during his life in said account or to give either of them any control over the funds and that on March 10th, 1934, he determined to revoke and terminate the joint and survivorship account and in withdrawing the money he simply exercised the complete and lawful authority which he had over the account.

After a trial of several days resulting in a record of some 650 pages of testimony in addition to a large number of documentary exhibits, the trial court found that the plaintiff was the owner of one-half of said total fund of $15,280, that Deuble at no time had had any interest in the plaintiff's half, and that from the date when he drew it out and put it entirely in his own name, he had been a constructive trustee of $7,640 of it for the plaintiff, that he was obligated to account to her for that sum, that the amount remaining in the account was impressed with a constructive trust in the plaintiff's favor, and he was ordered to pay it over to her for application upon the larger amount found due her.

Both at the close of the plaintiff's case and at the close of all the evidence, the defendant had moved for judgment on the ground "that the plaintiff had failed to sustain the allegations of the petition", and after the judgment and decree mentioned above, filed a motion for a new trial and also for "judgment in his favor upon the statements contained in the pleadings and upon the evidence received upon the trial." No demurrer was made to the opening statement nor was any preliminary and

general objection offered to the admission of any testimony on the ground that the petition failed to state a cause of action.

We have made the foregoing general statement of the pleadings because we conceive that there are three principal questions to be decided in the case, one as to the fundamental principle of law involved, the second as to the proof in the record, and a third question of pleading.

Tse plaintiff's story was that she was some seventy-two years of age, that she had brought up her niece, Cecelia; that the latter had lived with her from the time she was ten years of age; that in 1914 Cecelia married the defendant, Ralph E. Deuble, and thereafter the three lived together until April 1934, when Cecelia Deuble died; that she and Cecelia were like mother and daughter and trusted each other completely; that during all of these years the plaintiff and Mrs. Deuble had more or less kept their money in a single account, sometimes in both names, sometimes in only one; that on April 6, 1927, following many different family financial transactions a joint and survivorship account was opened in the names of herself and her niece in The Home Savings & Loan Company, Youngstown, and that she and her niece each had substantially a one-half interest in the funds that went into the account; that her interest in this account represented practically the only property of any sort which she had in the world; that during the depression years withdrawals from The Home Savings & Loan Company were put on a very narrowly restricted basis, but that they were able occasionally to make withdrawals of small amounts like $25.00 every few weeks; that they needed this money for living expenses; that she does not remember signing the card in October 1932, which added the name of Ralph Deuble to the account, but concedes that her signature on the card is authentic and says that she never did at any time intend him to have any authority to do more than make withdrawals for herself and niece of the small amounts permitted at that time; that she never intended to make a gift or transfer to him of the account or of her interest in the account; that while her niece was on her death bed, and about four weeks before her death, the defendant, Ralph E. Deuble, went to the bank and had the account transferred into a new account in his own name only; that because of the restrictions upon withdrawals he had been unable to withdraw this cash or any part of it, but had simply gotten a new book

without her name or that of Cecelia Deuble upon it, and that, after she discovered the condition of affairs, he had refused to give to her any of her own money or to account to her for it.

Counsel for the defendant argue that, as a matter of law, even if this was all true, this plaintiff would not have a cause of action, and that under the recent decisions of the Supreme Court of Ohio upon joint and survivorship accounts, once having admitted the authenticity of her signature on the card putting Deuble's name on the account, it was "just too bad", but nothing can be done about it.

Oleff, Admr. v Hodapp, Gdn., 129 Oh St 432.

Cleveland Trust Company v Scovie, 114 Oh St 241.

Sage v Flueck, 132 Oh St 377.

We do not believe this to be true. Not one of the cited cases in the Supreme Court is a case between the parties to the account while still alive, but each was a case of a dispute as to the rights of the survivor after the death of the other party to the account.

Counsel quote language from these opinions to the effect that the parties to such an account have invested each other with a present interest in the account from the date of its creation, which can only be divested by a process of the same dignity and solemnity as those of the investiture (Oleff v Hodapp, 129 Oh St 432) and that any attempt to vary the terms by parol will be ineffective.

We believe that these quotations and cases are entirely beside the point for two reasons. In the first place, whatever may be the rights of a survivor against the estate of a deceased party to such an account, we do not believe that this tells the story of the rights between the two while both are alive. The terms of the written contract affirmatively provide for the survivorship. . But almost never, and certainly not in the contract at bar, does the writing of the contract between the bank and the depositors provide anything about the rights of the parties inter se while both live. But almost always there is in fact an understanding between the parties as to what these rights are. One may have contributed all of the money, or each one part of it, or it may have been contributed by both in unequal percentages. We do not believe that the absence of terms as to their rights inter se in the contract which they make with the bank makes their beneficial right in the fund depend on a race to the

bank window or that the one who gets there first is entitled, as a matter of Ohio law, to it all, no matter in what proportions they may have contributed it or what may have been their understanding concerning it. The parties have by their writing provided only two things, the right of survivorship in case of death, and that either has the right to withdraw it while alive. As to these matters, with the usual exceptions in cases of fraud, mistake, etc., the writing controls, and may not be varied by parol. And all the cases cited by the defendant concern the right of the survivorship which had been specifically provided in the writing.

In entering into the contract with the bank the parties have vested each other with an interest in the account and have also vested each other with certain control and powers of withdrawal while both live. But we see no reason why their obligations inter se as to the use of these joint funds and powers should be governed by any different rules than the obligation of people inter se who invest and are invested with title of, and powers respecting, other forms of property.

It is perfectly commonplace in Ohio that express understandings of this sort may be proved by parol and enforced against the parties. Proof by parol evidence of the actual agreement or other circumstances surrounding the transaction might superficially seem to violate the Statute of Frauds when the transaction is a conveyance of land, or, superficially to violate the Statute of Wills when it concerns a transfer of title by will, or, superficially to violate the parol evidence rule when the transaction is a written agreement relative to property of any sort.

But in Ohio even express trusts may be engrafted upon absolute deeds, devises or deposits, by parol.

"Where an absolute conveyance of land is made by deed and there is nothing on the face of the deed to indicate that it was made on an express trust or for a trust purpose, and there is nothing in the deed which would be inconsistent with an oral trust, it is well settled that a parol express trust if sufficiently proven, may be engrafted upon such absolute deed. The rule that a written instrument—the deed in this case—cannot be varied by parol evidence is not involved in these cases. A deed does not usually purport to express the purpose for which it has been made. The admission of parol evidence to establish

an express oral trust is not considered as varying the terms of the deed, but as setting up an independent agreement which is entirely consistent with it. Obviously, if a purpose were set out in the deed itself, parol evidence of an express trust, inconsistent therewith, would be inadmissible, as that would vary the terms of the written deed. Parol evidence of an express agreement is admissible and may be engrafted upon a devise of land or personalty, and upon a deposit in a bank in the name of depositor."

40 Ohio Juris., Trusts, §33,
40 Ohio Juris., Trusts, §77.

In the first place, we believe that during the lifetime of the parties to a joint and survivorship account, when the written agreement is silent as to their rights and obligations inter se, the parties hold their respective property interests in the deposit and their respective powers over it, in trust for each other, subject to the actual agreement between themselves, whatever it may be, and that these obligations may be proved by parol and will then be enforced when sufficiently proven.

In the second place, we believe that all of the principles of constructive trusts are as applicable in this field as to any other type of property, and that equity will give relief against mistake or fraud in this field as quickly and as fully as it will with respect to any other class of property.

Certainly, the creation of a joint and survivorship bank account is no more sacrosanct than a deed of real estate, a will creation of a bank account in a single name, or a bill of sale of any personal property. In fact, it has been held that when property received through a judgment which was obtained by fraud must be held as a constructive trust for the defrauded person. Seeds v Seeds, 116 Oh St 144. Certainly, if Deuble, by fraud secured Mrs. Ferguson's name to a deed of her real estate, he may be made to disgorge, or if, without conscious fraud on his part, but under a mistake on her part, she had given him, without consideration, title or control over her real property, of a different sort or degree than was intended, she may correct the document or get back her property. Where there is a dispute between the parties to an agreement with reference to reforming it or upsetting it upon the ground of fraud or mistake, there can be no distinction between the law involved in a case of a contract concerning a joint and survivorship bank account, and that involved in any other written transfer of property, and both "accounting," and the device of a "constructive trust," the relief sought at bar, are but two of the equitable remedies through which equity protects the substantive rights of the parties, whatever they may be, or in whatever property they may exist.

As we have noted above, even express trusts may be engrafted upon absolute deeds, devises or deposits by parol, and the fiduciary obligations of the holder of the property enforced. And in the very nature of things, constructive or resulting trusts which are creatures of equity designed to prevent unjust enrichment through fraud or mistake may be established by parol evidence.

40 O. Juris., Trusts, §§77, and 76,
17 O. Juris., page 510.

"Sec 414. It is obvious that when a contract is attacked directly on the ground of fraud, or mistake, or other equitable cause for relief, parol evidence is admissible to support the allegations. It is in equitable actions seeking relief, as actions to cancel or reform instruments, that such evidence is admitted. As shown in the immediately succeeding sections, parol evidence of fraud or mistake may be admitted in actions at law within certain limitations."

We accordingly believe that if Mrs. Ferguson's story is true, she would have two grounds for the equitable relief which she asks; first, that of mistake or fraud in signing something she did not intend to sign, and second, the enforcement of a fiduciary obligation of Deuble who was given this control of the account for the purpose at most of being able to make the small withdrawals desired by his wife and aunt.

As to mistake, Mrs. Ferguson says that she does not remember signing any joint and survivorship agreement which included Deuble's name and she never meant to do so. Even a unilateral mistake is ground for relief when the person profiting thereby gives no consideration for what he has received. See Williston on Contracts, §§1573 and 1556.

In Barnes v Christy, 102 Oh St 160, the 6th syllabus reads:

"Courts of equity will not permit mis-

takes, whether innocently made or not, to work injustice and bring results contrary to the intention of the parties, and when one through mistake of the scrivener of a deed obtains the legal title of property, which in justice belongs to another, a court of equity will impress upon the property a trust in favor of the equitable owner."

And on page 172 the court said:

"The principle is well settled that where a person through mistake obtains the legal title and apparent ownership of property, which in justice and good conscience belongs to another, the property is impressed with a trust in favor of the equitable owner.

"In 18 Corpus Juris, 225, it is said: 'Where a voluntary conveyance is executed by a person, and by reason of a material mistake therein the instrument is not that which the grantor intended to execute, it may be set aside by a court of equity. * * * It has been held sufficient to show that a husband's name was placed in a deed as grantee or as a cograntee with his wife by mistake, where it is shown that he paid none of the consideration and disclaimed any ownership in the property; and where it is clearly established that by mistake of the grantor the wife of the grantee was named in the deed as a cograntee, the mistake may be corrected.' It is said in 23 Ruling Case Law, 332: 'There are many instances of the courts' correcting mistakes in names of the parties and of other persons mentioned in the instrument, such as naming a person as grantee by mistake, as where a conveyance was made to husband and wife instead of naming the wife as sole grantee.' The same principle is declared and upheld in 1 Story's Equity Jurisprudence (14 ed.) §§227, 228 and 229; Wilson v Castro, 31 Cal. 420; **Paddock v Adams & Holly, Exrs., 46 Oh St 242**; 39 Cyc. 171 and authorities cited there."

Obviously, if her story is correct and Deuble gave no consideration for the account and if she never intended him to be a party to it, equity will give Mrs. Ferguson relief on this ground.

"A mistake of law consisting in the use of inadequate or improper language in the expression of an agreement, or the form of an obligation or conveyance will be corrected in equity by reformation, the same as a mistake of fact."

16 O. Juris., Equity, §71.

And if Deuble got possession of this money through actual or constructive fraud, equity will compel him to account for it and will raise a constructive trust upon the balance remaining under his control.

16 O. Juris., Equity, §§64, 72, 73, 75, and 76.

40 O. Juris., Trusts, §76, et seq.

19 O. Juris., Fraud, §§160 and 159.

Next, as to the compelling performance of a fiduciary duty—Mrs. Ferguson's story is that she admits her signature on the new account, and remembers that while her niece, the one who usually looked after their money matters, and who had made every withdrawal in the preceding five and one-half years, was in poor health, it became necessary for them to make the small withdrawals of $25.00 allowed by the bank every two months and that she signed a card intended for that limited purpose, at most. If this is the truth, we have a case of a transfer by her to Deuble of a complete control over the entire account, although he would have received that control as a fiduciary for her to be used to make such withdrawals as she requested and needed.

The most dramatic case in Ohio in this field is **Winder v Schaley, 83 Oh St 204**, in which three men received a legacy, absolute in terms, but it was established by parol evidence that the testator had intended the bequest to be for the benefit of a lodge and they had so promised. The court of equity, "to prevent a wrong", declared that the legatees must hold the property as trustees to consummate the terms upon which they had received it.

The cases in Ohio are legion in which constructive trusts are declared in situations in which, by reason of his fiduciary position, one acquires an interest in property with respect to which he owes a duty to another.

See 40 O. Juris., Trusts, §§108, 33, etc.

The case of **Bender v The Cleveland Trust Company, 123 Oh St 588**, is a good illustration of the general proposition that a fiduciary cannot simply appropriate property as his own which is entrusted to him for other purposes. In that case Bender, who was aged and in poor health, added his wife's name to his bank account so that on the face of things either had complete power to make withdrawals. The fact was that this was done for his own convenience in making withdrawals for living expenses and not with the purpose of making a gift

to his wife of any part of this account. A few days before his death she exercised this power over the account by withdrawing the total sum. The court held that she must hold the proceeds as constructive trustee for the benefit of her husband's estate. The court says that the case is distinguishable from cases like the **Scobie case, 114 Oh St 241,** because the Bender account was not a survivorship account. Not being able to take as a survivor, as such, Mrs. Bender was relegated to proof of the fact as to whether she got it as a gift or held it as a fiduciary for her husband. Not only does this case illustrate the use of the remedy of a constructive trust in breaches of a fiduciary relationship but it serves to emphasize also the difference between the cases of survivorship and that at bar. Can there be any doubt but that, if the account **had** been a joint and survivorship account and Bender had survived, he could have gotten his money back from the wife who had abused his confidence, upon the showing of the same facts supported by his own word of mouth testimony that the addition of her name to the account had not been with the purpose of making her a gift but o. permitting her to make withdrawals for him.

The case of **Held v Myers, 48 Oh Ap 34,** is a further illustration of the same thing. Tattersall, prior to going to a hospital, put his money into a joint and survivorship account, not with the purpose of making a gift, but of putting the account in hands of one he trusted, for handling for him while he would be incapacitated in the hospital. He died and the survivor was held to be a constructive trustee of the funds. A fortiori if Tattersall had lived he would have been able to make Mrs. Myers account for the money and hold for him any part of it which she had withdrawn and put in any account in her own name only. A motion to certify this case was overruled, **48 Oh Ap XLVI.**

Assuming that the above abstract provisions of law are correct does the evidence in this record support Mrs. Ferguson's story as outlined above?

The defendant, Deuble, denied Mrs. Ferguson's story in substantially all of its important features and said that the bank account in question was the product of his own earnings over the years.

The plaintiff supported her own testimony in two ways. She first traced the history of the family funds and showed by cancelled checks certain of her own contributions thereto. She then, by several witnesses, undertook to discredit Deuble's testimony on enough issues to discredit arguably his word on all. It was obvious that either Deuble or the plaintiff was not telling the truth as to several matters.

The testimony was clear that from 1914 to 1934, when Mrs. Deuble died, the three had lived as a reasonably congenial family, and that Mrs. Deuble was the financial manager of the affairs of both her husband and her aunt. During that time Mrs. Ferguson, as widow of a Civil War Veteran had a pension varying in amount up to $30.00 a month. She had not paid the Deuble's board or rent, although she claims that, in addition to the larger sums more directly involved in the case, she did contribute money in small sums occasionally for rent, food, etc., and that she worked about the house and occasionally in the store. Both she and Mrs. Deuble were frugal and Deuble admitted never having known of Mrs. Ferguson spending any sizeable sums for any purpose during the period. Both the plaintiff and defendant were handicapped in making absolute proof as to their own financial condition and of the precise form of certain transactions by reason of the fact that Mrs. Deuble had handled the bank accounts of all three and that there had been several bank accounts in several cities over the years in the joint name of Mrs. Ferguson and Cecelia Deuble and at least two in the names of all three.

In his answer Deuble denied that Mrs. Ferguson ever contributed any moneys to the account and also denied that either she or Mrs. Deuble had any beneficial interest in the account. In a deposition taken at the outset of the case he testified that he did not know of any money that Mrs. Ferguson had ever had. Mrs. Ferguson's testimony was that in 1914, when the Deubles were married, she had about $6,500, of which $5,500.00 represented the settlement to her of her husband's estate and about $1,000 represented her own savings since his death. Her story was that she had, from time to time, placed all of this and its accruals and some further insurance money in joint ventures with her niece. She introduced in evidence two cancelled certificates of deposit totalling about $2,000 which she endorsed over to the defendant in 1914 and bore his endorsement. The defendant then admitted that these funds had been used to purchase a lot in Canton, Ohio, taken in his wife's name. Plaintiff then introduced in evidence a third certificate of deposit in her name for $2,000, also endorsed by the defendant. This certifi-

cate was dated June 20, 1917, and was practically conceded to have gone into the payment eight days later of a check for $2,500 to John Brenner for some stock in the John Brenner Jewelry Company which was issued in Deuble's name. Mrs. Ferguson also testifies that the balance of a total payment of $3,500 for this stock came from funds belonging to her, but she was unable to support this by documentary proof.

The plaintiff testified that $1,500 of her money went into the purchase of a lot on Norwood Avenue, Youngstown. This was unsupported by checks showing the payment but was supported by the documentary fact that the deed was made in her name. The building of the house on this lot was financed by Mr. John Brenner and the lot was then deeded to him for security during the period of payment.

She then introduced a check for $500 of hers from the Metropolitan Life Insurance Company, dated April 30, 1918, deposited in The Home Savings & Loan Company in an account in the name of all three. This money was traced into money paid by Mr. Brenner on the house account.

On January 16, 1925, the plaintiff received a check from the New York Life Insurance Company for some $1,300 which she testified was contributed to the defendant's business in Fort Wayne, Ind. Coincidence of dates and endorsements circumstantially support her claim that at least $1,000 of this check was so used.

The above transactions represent all, or at least the substantial contributions by the defendant of funds coming from what, for the reasons above given, would seem to be shown to be resources all her own. She also testified to a later deposit of $526.00, which came to her on the death of a sister, in a joint and survivorship account with Mrs. Deuble in a Warren bank. This, she testified, was all drawn out for hospital bills, etc., while Mrs. Deuble was in the hospital.

Her story is that she made these contributions to her niece to further their joint interests and that she received therefor only varying interests in the things purchased which from time to time were represented by land, corporate stocks, bank accounts, and an interest in the jewelry business of the defendant in Fort Wayne.

The above transactions both successfully contradicted the defendant's assertion that she never had anything to contribute and also show that she did contribute to these enterprises with her niece.

No proof was introduced by the defendant that the plaintiff had ever been repaid any of these advances. They were either gifts, to support which there is no testimony or were represented by an understanding with her niece that the aunt had an interest in their product.

The plaintiff then traced these funds into the final account here litigated. Immediately prior to 1920 they were substantially represented by the stock in the Brenner Jewelry Company and by an interest in the home. The latter was sold in 1920 and the proceeds traced through an account in the Mahoning National Bank in a joint and survivorship account in the three names in The Home Savings & Loan Company which on January 1, 1923, totaled $15,000. This account, plus the stock between 1920 and 1922, represented the common assets.

In 1922 the defendant, Ralph Deuble, with a partner Carl McCandless, bought a jewelry business in Fort Wayne for $30,-000. Into this went $3,500 obtained from a sale of the Brenner stock and all of the money from The Home Savings account. The plaintiff testified that she had some other money in it also, but no documentary proof of this is found in the record other than that above noted respecting the $1,-300 from the New York Life Insurance Company and her overlapping interest in a joint and survivorship account in Fort Wayne of some $3,000, into which $1,000 of this $1,300 check had gone.

The Fort Wayne business was finally sold out and after all debts had been paid, realized only $13,500. The plaintiff testified as to tears of the wife at the net result, an angry scene at which the defendant threw a check for this sum before them and said that there was their damned money and the remark by the wife that she had "prayed that we would have enough to pay Aunt Margaret her money". The defendant denies these incidents. Be that as it may, the money was first put in a joint and survivorship account in the names of Mrs. Ferguson and Cecelia Deuble in Fort Wayne, and ultimately transferred to the same sort of account in the same two names in The Home Savings & Loan Company in Youngstown.

Prior to this time it will be conceded that the precise form and terms of the obligations of the parties in these enterprises were not exactly as clear-cut as they might have been. We deem it adequately proven that Mrs. Ferguson had contributed substantial sums to the common family projects and that it was recognized that she had an interest in the assets corresponding

to her contribution. She testified herself as to the promise that the Brenner stock and half its dividends was to be hers, that a Marion bank book was given her as security, that she was to get her money out of the house, etc., etc., but none of these promises was committed in writing and at best the general arrangement from time to time was very hazy. And Mrs. Deuble, who managed it all, is now dead.

The plaintiff claims that the understanding was that her interest thereafter was represented by a one-half interest in these funds and that such was the intention of the joint and survivorship account in her name and that of Mrs. Deuble. And there would be enough in the history of the preceding twenty years to furnish adequate consideration and background for such an arrangement and to support the belief that however indefinite theretofore their financial obligations had been inter se, they were thereafter represented by a one-half interest each, in this account.

The defendant claims that the money was all his and explains that the reason that he put it in the name of his wife and aunt was not because he recognized any interest in either of them in it, but because he was threatened with an unjust suit by a jewelry merchant for $102.00. This would be a thin story at best, but when coupled with the fact that the record shows that for some time thereafter he had more than $102.00 in other accounts of his own, it tends to impeach his veracity, which impeachment is cumulative of that arising from the disproof of his testimony that Mrs. Ferguson never had any money and never contributed any to the family enterprises and from other testimony mentioned hereafter. With respect to the difference between his own interest and that of his wife, he testified that she had $3,500 when they were married and had financed him from her funds in various matters ultimately resulting in this bank account. In his answer, however, he denied that his wife had any interest in the account.

We now come to the crucial question of fact in the case, the adding of Deuble's name to the joint and survivorship account which stood in the name of his wife and aunt. Deuble does not claim that he discussed this with the plaintiff or explained it to her. All he claims is that she signed the card and is bound by the result. By signing the card he became a joint party with full power to withdraw it and if he did withdraw it, it became his money.

The plaintiff testifies that she does not remember signing it at all, but does remember that while the Home Savings & Loan Company was on a restricted withdrawal basis they could get no more than $25.00 every two months, that a postal card would arrive informing them when they could get the next $25.00, that Mrs. Deuble during most of this period was ill and that she may have thought she was authorizing Deuble to make these withdrawals, but never intended to give him authority to withdraw her money for any purpose other than these limited withdrawals which they needed to live on.

This account was opened on April 6, 1927. Mrs. Deuble died on the seventh anniversary of the account, April 6, 1934. Deuble got his name on the account on or about October 13, 1932. For five and one-half years prior to that date the only withdrawals made had been made by Mrs. Deuble. After that date he made eight withdrawals of $25.00 each and then on March 10th cleaned out the account by transferring it into an account in his own name.

He admits that he never told Mrs. Ferguson of this.

Because of the restrictions on withdrawals he even then could not withdraw the money in his own name but sold $10,000 of the $15,000 account for $7700. Of this sum he made an outright gift of $3,500 of it in currency to his father, married again, and spent the rest at a date not disclosed by the record, on household furnishings, a ring, an automobile and a trip.

The record contains the testimony above discussed that she originally had had resources of her own, that she had contributed very substantial sums to the transactions resulting in this fund, that Deuble himself had told one man that she had $25,000 in the bank, that he had told his partner, McCandless, and the latter's wife that Mrs. Ferguson was financing the Fort Wayne venture, and that she was the one who loaned $5,000 to him to make up his share of the capital, that McCandless' note for the $5,000 was payable to her, that after Cecelia's death the latter's sister heard him say to the plaintiff "I will give you your damned old money", that after this suit was filed he told the same sister that "he was willing to give her (Mrs. Ferguson) her share, but she acted so dirty with him that he wasn't going to give it to her," that he told another sister that "he was willing to give Aunt Margaret her share but she got smart and sued him and tied up everything and he wouldn't give her a cent."

This court did not, of course, hear the witnesses. The trial court did. Having read this record, we cannot say that the decision below was against the weight of the evidence. Indeed, so far as the truth can be gained from reading a transcript, it would appear that the decision was in accord with the weight of the evidence. We feel that the record supports the conclusion that the understanding of both parties was that Mrs. Ferguson had a beneficial ownership of a one-half interest in this fund, the product of original resources of her own, that she never intended to make Deuble a gift of the money nor to sign any authority in him to withdraw it, that when she signed the card in question she did so in ignorance of what it contained and with the purpose of authorizing him as a fiduciary for her to withdraw limited amounts for the support of herself and niece, that Deuble gave no value for the transfer to him of a joint interest in the fund and complete control over it, that to permit him to withdraw such fund and make it his own would unjustly enrich him at the expense of the plaintiff because of a mistake of fact and that equity can and will compel him to account to her for the funds of hers he has thus acquired.

We see no need of attempting to analyze the question of who was entitled to the other half of this account. In this connection the case of **Abrams v Nickel, 5 Oh Ap 500**, is interesting. Suffice it to say that Mrs. Ferguson is here making no claim to it.

The weakest thing about the plaintiff's case is in the pleadings. Even the fifth amended petition was amended by interlineation after trial. Not only did counsel make many futile attempts to plead a cause of action, but, as plaintiff's counsel point out, they are based on several such widely different theories as to reflect somewhat on the credibility of the plaintiff's story.

And we do not believe that even the present fifth amended petition, as amended states a cause of action.

The fifth amended petition was apparently drafted on the theory that all that was necessary to prove was that the plaintiff and her niece had contributed the money that went into the account, and that, inasmuch as Deuble had not contributed to it, he could not withdraw it. This is not true. Unless it should be shown that Deu-

ble had secured this interest in the control over the fund through fraud or mistake or was placed in such relationship in some fiduciary capacity which he was violating in withdrawing it, there would be nothing wrong about his exercising the legal power vested in a party to the account, and no reason why he should account for a penny of it or hold any of it as a constructive trustee for anyone.

No demurrer was filed to this petition. The answer sets up as a first defense that the petition fails to state a cause of action. No general objection was made to the introduction of evidence on this ground. After decree a motion for judgment on the pleadings and evidence was filed. This included the evidence and was properly overruled.

We believe that when a litigant does not elect to stand on the pleadings but goes to trial, and a case is made against him, not only should great liberality ██ exist in permission to amend the petition to conform to proof, even in this court, but we believe that such defects of omission are usually said to be cured by the proof of the necessary facts.

2 O. Juris., Appeal and Error, §686, p. 804.

Yocum, Admr. v Allen, 58 Oh St 260.

Cincinnati Company v Hoffmeister, 62 Oh St 189.

It is obvious that if a demurrer to a petition which omitted certain allegations necessary to state a cause of action, was improperly overruled, prejudice might result if the plaintiff was then permitted to take the defendant by surprise and introduce testimony on an issue of fact that had not been pleaded. In the present case there is no claim that the defendant was taken by surprise. Each party apparently put in all the testimony he and she desired on the subject matter of the lawsuit.

In the present case we can see no prejudice to the defendant in the fact that the petition may not state a cause of action when one was proved by the testimony.

An interesting case on this subject because it involves both the pleading and the constructive trust features of this case, is Lounsbury v Purdy, 18 N. Y. 515.

The judgment is affirmed.

NICHOLS, PJ, and CARTER, J, concur in the judgment.