**FOX ESTATE OF, In re**

Probate Court, 4th Dist., Jackson Co.

No. 3412. Decided July 3, 1942.

E. E. Eubanks, Jackson, guardian. M. M. Carlisle, Jackson, for Dewey Fox exceptor, W. J. Jones, McArthur, for S. A. Dixon.

## OPINION

By SLAVENS, M. D., J.

On July 23, 1941, E. E. Eubanks was appointed guardian by this Court of the person and estate of Theodore Robert Fox, an elderly farmer eighty years of age and a resident of Jackson County, Ohio. An appeal was perfected to the Court of Common Pleas, Jackson County, Ohio, and on January 6, 1942, the judgment was affirmed and the cause remanded to the Probate Court for further proceedings. During the time the cause was pending on appeal the ward, Theodore Robert Fox, removed or was removed to Vinton County, Ohio, without the knowledge or consent of his guardian, entered the Probate Court of that County with representations that he was a resident of Vinton County, Ohio, consented to the appointment of a guardian, presumably by reason of physical disability, and a Mr. Simon A. Dixon was so appointed.

Dixon secured possession of the personal assets of the estate which consisted, in the main, of a deposit in the First National Bank, Jackson, Ohio, in the amount of $3,217.00 and certain United States Treasury Bonds in the amount of $2,250.00. On January 12, 1942, the guardian, E. E. Eubanks, filed a complaint for the concealment of assets against Dixon, a hearing was had in this Court, judgment rendered in favor of the guardian and the assets were delivered to Eubanks, guardian, on April 10, 1942.

On April 16, 1942, an inventory of said estate was filed herein by the guardian and assets were therein listed as follows: Furniture and farming implements, $20.00: "Deposit in First National Bank, Jackson, Ohio, received from S. A. Dixon and The Ohio Casualty Insurance Company, $3,396.68" and designated as "money"; United States Treasury Bonds, $2,250.00: Real Estate of the estimated value of $2,430.00.

On April 20, 1942, Dewey Fox, aged 42 years, a son of Theodore Robert Fox, filed exceptions to the inventory of the guardian, claiming that he owned an undivided one-half interest in and to the sum of $3,398.68, listed as a deposit and designated as "money" in the inventory.

On the same date the guardian filed an application for instructions concerning the payment of certain claims presented to him, the same being the claim of S. A. Dixon for compensation as guardian, expenses, and attorney fees, while acting as guardian appointed by the Probate Court, Vinton County, Ohio, in the amount of $411.08, and the claim of John P. Fox for board and care of Theodore Robert Fox for 178 days at $2.00 per day, under a "contract by S. A. Dixon & Probate Court, of Vinton County,

Ohio" and being in the amount of $356.00. The three questions were submitted on the same date. At the conclusion of the hearing the guardian was instructed concerning the claim of John P. Fox and discussion of that claim is unnecessary at this time.

The questions concerning the exceptions of Dewey Fox to the inventory of the guardian will be first discussed.

The record reveals that the application for appointment as guardian of Theodore Robert Fox was filed by Dewey Fox (exceptor herein) on April 16, 1941; that the person for whom the appointment was sought was notified by personal service of written notice on April 16, 1941. The evidence introduced at the hearing on the exceptions to the inventory revealed that on the 16th day of April, 1941, Dewey Fox and Robert Fox (Robert Fox being Theodore Robert Fox) had a savings deposit in the First National Bank, Jackson, Ohio. This was a joint and survivorship account and in the usual language, "Dewey Fox or Robert Fox payable to either or the survivor". This account was opened on March 2, 1936, with a deposit of $3,450.00 and on May 16, 1941, the balance in the account was $3,417.00. The interest had been withdrawn at intervals and no new deposits were made during the life of the account. On May 16, 1941, Theodore Robert Fox. withdrew the entire amount, started a new account in the same bank and on the same day in the amount of $3,417.00 but in his name as Robert Fox. There is no dispute that the new deposit represented the funds that were in the joint deposit. It is the fund represented by the new deposit that subsequently came into the possession of Simon A. Dixon, who, thereafter, transferred the same to E. E. Eu-

banks, present guardian, and is now represented in his inventory as an asset of the estate. It is fortunate that this item has, through the many hands it has passed, been kept separate and apart from all other funds or assets and the question of co-mingling does not arise and the problem of tracing is not difficult.

The exceptor contends that the initial deposit on March 2, 1936, represented the accumulation of the profits derived from the joint efforts of his father and himself over a long period of years in buying and selling cattle and operating the farm. This is stated in his following testimony:

Q. Tell the Court what that understanding was.

A. We worked together all our life. He always told me if I would stay with him we would be partners together. It just left me and him. We raised cattle and accumulated what we could.

Q. Can you tell the Court about when that was?

A. Well, I couldn't tell just exactly. It was in all the whole lifetime, that is, we worked together, as much as I could say.

Q. About how old were you when you and your father came to this understanding?

A. We understood all along from the time I was sixteen, seventeen, or until I came twenty-one. I was my own man. He wanted me to stay with him—all the rest was gone. He couldn't handle his land and such as that, and I stayed with him, and we worked partners together.

Q. When did this relationship cease?

A. Well, on up till, oh, the last few years he wasn't able to work. He turned it over to me and told me to go ahead and make it the

best I could. I still went ahead, raised cattle, sold them and banked on joint accounts.

Q. In what banks did you make your deposits?

A. First National Bank down here, and Oak Hill Savings Bank.

The evidence further discloses that on April 16, 1941, the exceptor and his father had a joint and survivorship account in the Oak Hill Savings Bank in the amount of $1,150.00 and it is contended that it represented an accumulation of their joint earnings; that subsequent to April 16, 1941, Theodore Robert Fox and a daughter, Ruth Moore, withdrew $600.00 of this account leaving therein $550.00 which was subsequently withdrawn by this exceptor.

In a consideration of the ownership of deposits of this nature it is interesting to note that the questions presented for judicial determination have usually been cases where the dispute exists between the survivor and the representatives of the estate of his co-depositor.

Counsel for the exceptor has not favored the Court with any authorities concerning the rights of such co-depositors inter se but independent investigation by the Court reveals that the question has been presented to the Courts in various forms and that the authorities are difficult to reconcile.

The problem is recognized in 5 O. Jur. 94 at page 392 in the following language:

"In the cases of joint accounts two situations must be kept in mind. There is, first, the situation where the money deposited is the property of both depositors. In such a case, no difficulty is encountered because of the contractual relation based upon mutual consideration".

In 9 C. J. S. 994 at page 1418, a statement is made as follows:

"A withdrawal of a deposit by one joint tenant, without the consent of the other and the placing of the fund so received in a deposit in such tenant's name, has been held not to divest the interest of the other joint tenant in such funds, and, also not to deprive him of his right of survivorship".

The contract between the bank and the depositors provides no assistance in determining the rights of the parties inter se while still alive. In this instance there is uncontroverted evidence that the parties had an understanding concerning their rights inter se, as indicated by the testimony of the exceptor above referred to and quoted. This question is interestingly discussed in **Ferguson v Deuble, 27 Abs 533** as follows:

"We do not believe that the absence of terms as to their rights inter se in the contract which they make with the bank makes their beneficial right in the fund depend on a race to the bank window or that the one who gets there first is entitled, as a matter of Ohio law, to it all, no matter in what proportions they may have contributed or what may have been their understanding concerning it."

The case at bar does not fall within the rule enunciated in **Abrams, Gdn., v Nickel, et, 50 Oh Ap 500** and which is stated in the syllabus as follows:

"The adjudication of lunacy and appointment of a guardian of one of the two parties to a joint and survivorship account terminates the agreement, and as each had a complete interest in the entire ac-

count, equity requires, in the absence of extraordinary circumstances, an equal division of the account between the parties involved as of the time the guardian was appointed."

At the time of the withdrawal the guardian had not been appointed and the Abrams Case (supra) apparently considers the adjudication of lunacy and appointment of a guardian to be a condition precedent to the operation of the rule therein stated.

The Abrams case (supra) was subsequently discussed in Ulmer v Society For Savings, et, 35 Abs 525, in an action by the guardian of an incompetent wife to divide a joint and survivorship account equally. The language of the opinion, on page 526, is as follows:

"In this case there is an attempt to divide the fund while both parties are living. When this is undertaken, opportunity should be given to prove just what interest each actually has in the funds. When it is determined to be advisable that a joint and survivorship account should be terminated, it would seem to be more equitable that each should be entitled to such funds as was placed in the account by each party thereto rather than arbitrarily divided in two equal parts, unless a gift was intended as shown by proof."

Sec. 10507-4 GC (last paragraph) provides:

"From the service of such notice until the hearing, as to all persons having notice of such proceedings, no sale, gift, conveyance or encumbrance shall be valid, of the property of such incompetent, habitual drunkard, idiot, imbecile, lunatic or confined person".

The withdrawal by Theodore Robert Fox, while made subsequent to the service of written notice upon him and prior to the hearing, did not constitute a sale, gift, conveyance or encumbrance and the bar of invalidity cannot thereby be raised.

This Court takes the view that the joint and survivorship account started by the exceptor and his father in the First National Bank, Jackson, Ohio, on March 2, 1936, was the accumulation of their joint efforts and represented the property of both depositors. There is evidence that there was an agreement between them concerning their rights inter se and the terms of this agreement are illuminated by the action of Theodore Robert Fox in withdrawing $600.00 of a similar account in the amount of $1150.00 in the Oak Hill Savings Bank about the time the withdrawal was made by him from the First National Bank. In that instance, he regarded their interests in the deposit to be equal, or substantially so. This Court is of the opinion that the equality of interests extended to the account in the First National Bank at Jackson and that a withdrawal of the entire amount by Theodore Robert Fox, without the consent, agreement or knowledge of his co-depositor constituted a wrongful exercise of dominion over the property of the exceptor herein. This property having been traced into the hands of E. E. Eubanks, guardian of Theodore Robert Fox, and the question of determining the ownership thereof having been presented by the exceptions to the inventory of the guardian, it is ordered that the guardian pay and deliver to Dewey

Fox, the rightful owner thereof, one-half of the sum of $3,398.68 as listed in the inventory of the guardian.

The application of the guardian for instructions, under authority of §10504-66 GC, concerning the payment of the claim of S. A. Dixon for compensation and expenses as guardian and for his attorney fees is now considered.

The appointment of S. A. Dixon as guardian of Theodore Robert Fox by the Probate Court of Vinton County, Ohio, on the 20th day of December, 1941, was void. This rule is set forth in 20 O. Jur. 16 at page 254, as follows:

"Of course, a necessity must exist before a guardian will be appointed. Such cause arises on death of a parent, incompetency of an adult person, or where the natural guardian is unsuitable. There must also be no existing guardian; it is the general rule that where a guardian has been appointed by the proper authority, and is in the discharge of the duties of his trust, the appointment of another person to the same office is void."

It follows that the person appointed as guardian, subsequent to the appointment of a guardian by the proper authority and who is discharging the duties of his trust, is not entitled to compensation or expenses or attorney fees. A guardian is entitled to compensation and expenses incurred in the administration of his trust by reason of his appointment as such. If his appointment is void, he is not so entitled to the emoluments of the office.

It is apparently the contention of the claimant, Dixon, that he is not bound by the rule stated above and is removed from the operation thereof by the fact that he had no knowledge of the appointment by this Court; that he acted in good faith in securing his appointment in Vinton County Probate Court and after his receipt of the color of his office he diligently performed the duties incident to a guardianship.

The claimant testified that on December 2, 1941, he called upon E. E. Eubanks, the guardian appointed by this Court, and was informed by Eubanks that he was not the guardian. This was denied by Eubanks. The claimant also testified that he came into the Probate Court, Jackson County, and inquired concerning the guardianship of Theodore Robert Fox, and that he discussed the situation with the judge of said Court. The writer does not recall this visit. The records of the Court were open for the inspection of Mr. Dixon if he desired to avail himself of the opportunity to gain the information he states he was unable to acquire elsewhere, namely: who was then the guardian, if any, of Theodore Robert Fox. The claimant returned to Vinton County, apparently satisfied there was no guardian of Theodore Robert Fox, and on December 20, 1941, he secured the appointment as such by the Probate Court of that County.

If this Court were to advise the present guardian that this claim should be paid by him from the assets in his hands, this Court would sow the seeds of injustice which would be so far reaching that no guardian would be secure from defending claims for compensation and expenses presented by volunteer guardians whose appointments were illegally secured, and the guardian is instructed to reject the claim of S. A. Dixon.