MOORE, ESTATE OF, IN RE.

Probate Court, Portage County.

No. 21866.   Decided April 24, 1962.

*Mr. T. K. Jenkins,* Buffalo, New York, for the exceptor.
*Mr. George Leyshon* of *Messrs. Kitchen, Messner & Leyshon,* for the executor.

DIETRICH, J. This matter is before the Court on Exceptions filed by LaVerne Moore Jenkins to the Inventory of the Estate of Robert William Moore. The decedent died on December 14, 1961 leaving a will by which his estate was divided equally between three brothers and thirteen nieces and nephews. The Exceptor is one of these nieces.

The Exceptions are directed toward two items in the Inventory: (1) A savings account in the Home Building and Loan Association, Kent, Ohio, with a balance at the decedent's death of $10,612.08; (2) A savings account at the First Federal Savings and Loan Association, in the same city, with a balance of $8,184.77. It is the contention of the Exceptor that these accounts should not be considered as assets of the decedent's estate, that they were joint and survivorship accounts, and accordingly, upon the decedent's death were payable to a niece Gladys M. Montgomery and a nephew Harold W. Moore, whose names appear upon the accounts as co-depositors.

It is the finding of the Court that the evidence established the following facts as to the history of these accounts. The account in The Home Building and Loan Company was created by the decedent as far back as 1948. The First Federal Savings and Loan account was created in 1957. Both accounts were carried on by the decedent, Robert William Moore in a normal way until 1961.

About two years previous to his death, the decedent suffered a head injury due to a building accident. After this event according to one witness "he did not seem the same," and dur-

ing the year 1961, he obviously was suffering from rapidly accelerating senility. City and County police officers testified that frequently they would find him wandering about the streets, generally late at night, not knowing where he was, where he was going or the location of his home. One officer called to his home by a neighbor found him trying to extinguish the cooking units on an electric range by pouring water on them. He became disoriented as to the time of day and the seasons, insisting that a neighbor do plowing for him in February. He would appear at neighbor's homes not knowing where he was. In one instance, in September of 1961, he was found at large with insufficient clothing and unable to explain to the officer his identity. In another instance he entered a bank and wanted to get into his safety deposit box which was in another bank. A neighbor who had formerly dealt with him in a business way, terminated all transactions with him "because he acted so queerly" that the neighbor feared he might be accused of taking advantage of Mr. Moore. His bank permitted him to withdraw funds only under careful scrutiny.

On August 24, 1961, he called at a neighbor's home saying he was ill. A physician was called and a thorough examination was made at a local hospital. The doctor concluded that he was "senile, and suffering from sclerosis and degenerative arthritis."

The decedent spent the last weeks of his life in a nursing home. He was seventy-five years of age at the time of his death.

The evidence showed that on March 20, 1961, Gladys M. Montgomery, the decedent's niece called at the Home Savings and Loan and asked for "a form to make Mr. Moore's account into a joint and survivorship account." A card was given to her which contained a contract for such an account. Later she brought this card back purportedly signed by the decedent, Gladys M. Montgomery and Harold W. Moore, a nephew. The bank then added these two additional names to the pass book and the ledger sheet.

On September 12, 1961, the parties went through a similar procedure with Mr. Moore's account in The Federal Savings and Loan Association. In this instance the signatures of the niece and nephew were written at the top of the card and not at the designated place at the end of the printed contract. No one

at either of the financial institutions saw the parties sign the cards, and no testimony was proffered as to where this was done, what the physical or mental condition of Mr. Moore was, nor any evidence as to the conditions under which this signing took place. On the Home Savings and Loan card the signature was "Robert Williams Mooree." On the First Federal account the signature was "Robert Willing R. Moore." The Executor introduced in evidence seventeen other signatures of the decedent. In no other instance did the signatures correspond with either of the signatures allegedly signed on the joint and survivorship contract cards.

The situation depicted by the foregoing facts, is one that has become quite common in the administration of estates and has been the subject of much litigation with varying results. Where the circumstances are regular and normal the basic rule as to joint and survivorship accounts is well established. Under Section 1105.09, Revised Code, when a joint bank account is made "payable to either or to the survivor" upon the death of the creator, the surviving depositors have a right to the remaining balance to the exclusion of the personal representative of the creator. *Cleveland Trust Co.* v. *Scobie,* 114 Ohio St., 241; *Sage* v. *Flueck,* 132 Ohio St., 377.

However, more recent decisions have established considerable flexibility in the application of this rule.

Now, the fact that a bank account is carried in the names of two or more persons jointly with right of survivorship is not always conclusive as to the ownership of the account, and where a controversy arises as to ownership of such account, evidence is admissible, in a proper case, to show the true situation. "Obviously, the creation of a joint and survivorship bank account is a matter of intention to be ascertained from the conduct and actions of the persons concerned." *Estate of Hatch,* 154 Ohio St., 149, at p. 152; *Union Properties Inc.* v. *The Cleveland Trust Co.,* 152 Ohio St., 430; *Fecteau* v. *Cleveland Trust Co.,* 171 Ohio St., 121.

When Exceptions are filed to an Inventory, the Probate Court has jurisdiction to determine whether property included therein belongs to the Estate or the exceptor. *Bolles* v. *Toledo Trust Co.,* 136 Ohio St., 517; *In Re: Gottwold,* 164 Ohio St., 405; *Hoover* v. *Hoover,* 90 Ohio App., 148.

Further it has been held specifically that the ownership of funds in a joint and survivorship account, upon the death of one of the parties, passes to the survivor by virtue of a contract. The funds do not pass under the principle of survivorship, but by a contract by the terms of which the owner of the funds agrees with the bank that another be vested with a present interest in the account, which interest shall survive the death of the depositor. *Estate of Hutchison*, 120 Ohio St., 542; *Oleff* v. *Hodapp*, 129 Ohio St., 432; *Sage* v. *Flueck, supra*; *Estate of Fulk*, 136 Ohio St., 233.

Considering these principles, the solution to this situation depends upon the application of two basic rules of the law of contracts.

In order to create a valid contract, the parties to the negotiations must be competent to contract. Considering carefully all of the evidence adduced in this case, the conclusion is inescapable to this Court, that at the time that these two accounts were placed in a joint and survivorship form, the decedent was not capable of carrying on the ordinary business affairs of life and as a matter of law was incompetent to make a valid contract. "Transactions between infirm persons and those with greater intelligence and better conditions of health impose upon the latter a higher responsibility than exists between normal persons." *Hoover* v. *Hoover, supra*.

Second, to make a valid contract the parties thereto must have a distinct and common intention which is communicated by each party to the other. In other words there must be a meeting of the minds. In this case, there is no evidence that any officer of the Savings Associations talked to Mr. Moore or communicated with him in any way regarding the transactions. The signed cards were brought to the Associations' offices by relatives who produced no evidence of any authority to act in Mr. Moore's behalf. It is impossible for the Court to see how a valid contract, binding on the decedent, could result from such circumstances. The evidence supports the conclusion that the decedent could form no intent to make the co-depositors a gift of these funds but that he signed the cards in ignorance of what they contained and for the purpose of authorizing them to withdraw limited amounts for his support.

Accordingly it is the finding of the Court, that under the

circumstances shown in this case, these accounts were not joint and survivorship contracts; that these funds were properly included in the Inventory of the decedent's Estate and the Exceptions must be overruled.

The conclusion herein made is in conformity to the rulings made in the following cases where the Courts were considering similar circumstances. *Ferguson* v. *Deuble*, 27 Ohio Law Abs., 533; *In Re: Schroeder*, 75 Ohio Law Abs., 555; *Estate of Ray*, 79 Ohio Law Abs., 368; *Rogos* v. *Gaydos*, 110 Ohio App., 263; *Fecteau* v. *The Cleveland Trust Co., supra*.

Counsel will file a Journal Entry in conformance to this finding, noting proper exceptions.