COHEN & COMPANY, CPAs, APPELLANT, *v.* MESSINA, CPA, APPELLEE.

---

(No. 48894—Decided April 8, 1985.)

*Donald S. Scherzer,* for appellant.
*David J. Hessler,* for appellee.

ANN McMANAMON, J. On May 17, 1982, plaintiff-appellant, Cohen and Company ("Cohen"), filed an action against defendant-appellee, Anthony J. Messina, to enforce certain client ownership provisions in its personnel manual.[1] Cohen claims that these provisions require Messina to compensate Cohen for clients appellee allegedly took from the firm following his resignation. Appellant subsequently filed an amended complaint which included a claim based on promissory estoppel. The company contends that Messina's avowed intention to pay for the clients he took estopped

---

[1] Both the February 1979 and November 1979 versions of the manual contained the following language, designated as Section III(G)(4):

"Any client brought into the Firm by an employee is 50% owned by the Firm and 50% owned by the employee. When employment ceases for any reason, the employee will be given first option to retain any personal clients. He will remit to the Firm 50% of fees charged for the twelve months next succeeding termination of employment as the fees are collected. If other clients are desirous of being serviced by the employee, the amount will be 100% of fees, but in no event may any Firm client be solicited without permission. Should termination result in the employee's not being able or willing to service said personal clients; or should the clients prefer to remain with the Firm, 50% of fees charged for the twelve months next succeeding termination will be paid to the employee as the fees are collected."

him from denying his obligation to make such payments.

The matter was tried to the court, which determined that Messina became an employee of Cohen on October 1, 1977. During February 1979, the company issued a personnel manual which delineated company policies and procedures. Among the subjects included was a section entitled "Termination of Employment," which contained a client-ownership provision. The manual was originally written by Ronald B. Cohen, the company's managing partner, who also had final authority to make any changes or modifications in it. A revised version of the manual which contained an identical termination provision was distributed sometime in November 1979.

Prior to leaving Cohen on November 1, 1981, Messina had discussions with firm members concerning his termination. At the direction of Ronald Cohen, Messina informed various clients he was leaving the firm to establish his own accounting practice. Messina never solicited these clients and took no Cohen clients with him when he left.

For a period of approximately one week to several months following Messina's departure, various firm clients on their own initiative notified Cohen of their intention to terminate their relationship with the firm and to engage Messina's services. Ronald Cohen and other firm employees then contacted those clients in an attempt to persuade them to remain with Cohen. Despite such efforts, several clients left appellant and employed Messina. Cohen sued Messina for the net amount billed and received by him for accounting services rendered to former clients.

This appeal challenges the trial court's ruling that neither an enforceable contract nor promissory estoppel required Messina to pay for the Cohen clients he later serviced. Appellant cites five assignments of error.[2] Because appellant's first three assignments of error are related, they will be consolidated for review.

I

The major issue in this case is whether Cohen's personnel manual and the client-ownership provision contained in it have the efficacy of a binding contract. The appellant contends that the trial court erred in refusing to enforce the subject provision as a binding contract which obligated Messina to pay for the clients he allegedly took from the firm following his resignation. We disagree.

Ohio courts have given effect to provisions in employee manuals and other documents provided by the employer as

---

[2] Appellant raises the following assignments of error:

I

"The trial court erred in refusing to enforce the client ownership provisions in Cohen & Company's Personnel Manual as a binding contract."

II

"The trial court erred in concluding that no 'meeting of the minds' existed with respect to the client ownership provisions in Cohen & Company's Personnel Manual."

III

"The trial court erred in concluding that no adequate legal consideration supported the enforcement of the client ownership provisions in Cohen & Company's Personnel Manual."

IV

"The trial court erred in concluding that only a former employee's solicitation of clients violated the client ownership provisions in Cohen & Company's Personnel Manual."

V

"The trial court erred in concluding that no detrimental reliance occurred as a result of defendant-appellee Anthony J. Messina's representations that he would comply with the client ownership provision in Cohen & Company's Personnel Manual."

part of the employment contract. *Hedrick* v. *Center for Comprehensive Alcoholism Treatment* (1982), 7 Ohio App. 3d 211, 213. *Smith* v. *Teledyne Industries, Inc.* (E.D. Mich. 1984), 578 F. Supp. 353, 354 (diversity suit applying Ohio contract law). Such manuals may be important in establishing the terms and conditions of employment. See *Hedrick, supra*. However, in order for such manuals to be considered valid contracts, there must be a "meeting of the minds." *Parklawn Manor, Inc.* v. *Jennings-Lawrence Co.* (1962), 119 Ohio App. 151, 156 [26 O.O.2d 341]. The parties must have a distinct and common intention which is communicated by each party to the other. *In re Estate of Moore* (P.C. 1962), 90 Ohio Law Abs. 170, 174 [26 O.O.2d 37]. The determination of contractual intent involves questions of fact whose resolution has already been determined by the trial court.

In support of its argument that the client-ownership provision in the company's personnel manual is enforceable as a valid contract, appellant relies primarily on *Harding* v. *Montgomery Ward Co.* (1944), 41 Ohio Law Abs. 243, in which the Court of Appeals for Miami County concluded that the basis of the employee's claim was a contract which had been entered into by way of a store manual issued by the company to fix and control the salary and bonus to be paid to store managers.

We find important factual distinctions between *Harding* and the instant case. In *Harding,* the manual was already in existence when the employee entered into the employment. In addition, the court found that the nature of the bonus indicated that both parties agreed to the terms embodied in the store manual.

The instant record discloses that the personnel manual was published and issued to employees some sixteen months after Messina joined the Cohen firm. Although appellant maintains that the disputed provision constituted a binding contract because it was the only agreement between the parties as to client ownership, the record indicates that the parties never reached any such agreement. The trial court found that neither the initial nor the revised version of the manual contained an attestation clause. While an attestation clause is not essential to the formation of a valid contract, its absence was an indication that Cohen employees were not required to acknowledge that they received copies of the manual or understood or agreed with the policies and procedures outlined.

From the record before us, we are unable to conclude that the parties intended the manual to become part of the employment contract.

Appellant further argues that despite the company's ability to unilaterally modify the personnel manual, the subject provision is enforceable. This court has previously held that an employee handbook is merely a unilateral statement of company rules and regulations, and does not constitute an employment agreement. *Isgro* v. *Deaconess Hospital* (Oct. 30, 1980), Cuyahoga App. No. 41996, unreported.[3]

The evidence in the instant case reveals that both the initial and later manuals were written by Ronald B. Cohen, the managing partner of Cohen and Company. Although Cohen received some input from various employees, he had final authority as to any changes or modifications in manuals. The fact that the original manual was not issued until long after Messina joined the firm serves to support the trial court's finding that the manuals were merely unilateral expressions of company policy, and

---

[3] *Isgro* was followed in *Egan* v. *Mt. Sinai Hospital* (July 15, 1982), Cuyahoga App. No. 44058, unreported, at fn. 4.

were not bargained for by the parties.[4] Nothing less than performance will tender acceptance of an offer to enter into a unilateral contract. *Bretz* v. *Union Central Life Ins. Co.* (1938), 134 Ohio St. 171, 175 [11 O.O. 587]. We find that the subject provision created in the terminated employee the option to purchase clients, but not a duty to do so.

Appellant's next contention is that the trial court erred in concluding that no adequate legal consideration supported enforcement of the client-ownership provision in the company's personnel manual. Consideration is an essential element necessary to the creation of a valid contract. *Palmer* v. *Prunty* (App. 1958), 79 Ohio Law Abs. 186, 188, affirmed in part and reversed in part on other grounds (1959), 168 Ohio St. 573 [7 O.O.2d 450]. Ohio has previously determined that a restrictive covenant in a contract for services is void for want of consideration where it was not included in the original contract of employment but in a subsequent contract for continuance of employment and was strictly for the protection of the employer. *Morgan Lumber Sales Co.* v. *Toth* (C.P. 1974), 41 Ohio Misc. 17, 19 [70 O.O.2d 33].

Appellant maintains that the *Morgan Lumber* decision is inapplicable to the instant case because, among other reasons, the company's retention of Messina as an accountant as well as the compensation paid to him for personal clients he brought to the firm constituted independent consideration supporting his obligation to comply with the subject provision. We disagree.

In this case, as in *Morgan Lumber*, the disputed provision was not in the original contract, and, in fact, was not announced until after Messina had been employed with the company for sixteen months. Furthermore, Messina's position, duties, and the nature of the business remained exactly the same as before the manual was distributed; the employment relationship was "at will," and the company assumed no obligation it did not already have. See *Morgan Lumber Sales Co.* v. *Toth, supra.* The trial court found that continuation of Messina's employment was the only consideration the company gave him. "* * * [N]either the promise to do a thing, nor the actual doing of it will constitute a sufficient consideration to support a contract if it is merely a thing which the party is already bound to do, either by law or a subsisting contract with the other party. * * *" *Rhoades* v. *Rhoades* (1974), 40 Ohio App. 2d 559, 562 [69 O.O.2d 488]. Thus, as *Morgan Lumber* indicates, the trial court was correct in ruling that mere continuation of employment, without additional consideration, is insufficient to support the client-ownership provision as a contract.

Appellant's argument that the client-ownership provision in the company's personnel manual is supported by adequate legal consideration is without merit.

We will not reverse the trial court's findings unless they are against the manifest weight of the evidence. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [39 O.O.2d 366]. Although there was conflicting evidence presented as to whether the parties intended the client-ownership provision to create an obligation to pay for clients taken from the firm, we are persuaded that there was sufficient evidence to support the trial court's judgment.

For the foregoing reasons, appellant's first three assignments of error are overruled.

II

Appellant argues, in its fourth assignment of error, that the trial court erred in concluding that only an em-

---

[4] See *Johnson* v. *Natl. Beef Packing Co.* (1976), 220 Kan. 52, 55, 551 P. 2d 779, 782.

ployee's *solicitation* of clients violated the client-ownership provision in the personnel manual. Appellant contends that the subject provision binds Messina to pay for the clients he took even if he did not solicit them. According to appellant, the plain language of the provision requires this result.

As we read Section III(G)(4), we find that the only prohibition regarding *firm* clients is that they may not be solicited without permission. The rules relating to fifty-percent remittance of fees refer only to *personal* clients. In addition, the trial court found that, at the direction of Ronald B. Cohen, Messina informed Cohen clients that he was leaving the firm and establishing his own accounting practice. According to the court, this notification did not constitute soliciting, where testimony revealed that the clients voluntarily terminated their relationship with the company. In fact, the court found that Messina never solicited any firm clients.

For these reasons, we find the trial court was correct in concluding that Messina's actions did not violate the client-ownership provision.

Appellant's fourth assignment of error is overruled.

## III

Appellant contends in its final assignment of error that the trial court erred in concluding that no detrimental reliance occurred as a result of Messina's alleged representations that he would comply with the client-ownership provision in the manual. Appellant maintains that, since Messina stated his intention to pay for the clients he took, he should have foreseen that the company would rely on receiving compensation and, as a consequence, refrain from contacting or continuing to service its clients.

Ohio has set forth the elements necessary for the application of the doctrine of promissory estoppel. There must be a promise, clear and unambiguous in its terms, reliance by the party to whom the promise is made, the reliance must be reasonable and foreseeable, and the party claiming estoppel must be injured by the reliance. *Vocke* v. *Third Natl. Bank & Trust Co.* (1971), 28 Ohio Misc. 58, 73-74 [55 O.O.2d 258]. See, also, *Campbell* v. *Sirak* (S.D. Ohio 1979), 476 F. Supp. 21, 29, affirmed (C.A. 6, 1982), 705 F. 2d 451. We believe that these elements have not been met in the instant case.

The record discloses that Messina had discussions with various firm partners concerning termination of his employment. While he may have negotiated and discussed the possibilities of purchasing clients, he made no promises or representations that he would compensate the firm for any former clients he would ultimately service. Cohen argues that Messina never strongly objected to the client-ownership scheme. However, Messina told the court that he specifically informed Cohen that he did not agree with the client-ownership provision because he did not believe the purchase of firm clients was ethical.

We find the record supports the trial court's conclusion that Messina made no promises or representations on which Cohen could rely so as to invoke the doctrine of promissory estoppel.

Appellant contends that it sustained substantial financial injury when it lost clients to Messina without reimbursement. Specifically, the company claims that, because it relied on Messina's alleged intent to purchase the clients, its efforts to retain them began too late to keep them from leaving and hiring Messina. The evidence reveals that the company's financial loss was not caused by its reliance on any alleged representation by Messina that he would pay for these clients. The trial court found that at the time of his resignation, Messina did not take any firm clients with him. It was one week to several months *after*

his employment had terminated that various Cohen clients told appellant they intended to terminate its services and hire Messina. Cohen subsequently attempted to persuade these clients to retain the appellant's services. Despite Cohen's efforts, several of these clients employed Messina. One former Cohen client testified that he followed appellee because he was dissatisfied with the service provided by Messina's replacement.

We find that the evidence does not support a finding of promissory estoppel. Appellant's final assignment of error is not well-taken.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

NAHRA, P.J., and KRUPANSKY, J., concur.