OPINION
This appeal is brought by pro se Appellant Gary Hankins from a judgment of the Court of Common Pleas, Shelby County granting summary judgment to Appellee, Adecco Services of Ohio.
Appellee Adecco Services (Adecco) is an employment agency which assigns employees to client work sites. Adecco's standard policy and procedure with its clients allows the client to terminate an assignment at any time. Because a temporary worker is employed at Adecco, not Adecco's client, when the client ends an assignment, the worker's employment with Adecco continues, even though that particular assignment does not. At the end of an assignment Adecco and its employee work together to find that employee another assignment.
In May 1999 Adecco employed apellant Gary Hankins (Hankins). Soon thereafter, Adecco placed Hankins at the Honda of America, Anna Engine Plant in what's known as the Manufacturing Career Program (MCP). The MPC provides temporary workers the opportunity to be placed at Honda for up to a maximum of two years, if work is available, with the eventual goal of being placed in the graduate pool of workers who could be hired permanently. Permanent placement with Honda, however, is not guaranteed.
At the end of March 2000, Honda unilaterally ended Hankins' assignment due to Honda's reorganization and upgrade of the process on which Hankins worked. Only permanent employees would be trained in the new process. Two other temporary employees lost their positions as a result of this change.
Adecco, through its on-site representative at Honda, was able to place Hankins in a different position at Honda on an assembly line. Hankins tried this job but was not satisfied with it and requested a different position, not on an assembly line. Adecco was not able to find suitable placement for Hankins at Honda.
A few weeks later, Adecco placed Hankins with a different client, NK Parts, where he worked from May 2, 2000 to July 25, 2000. Hankins' position at NK Parts required him to transfer transmissions from a conveyer belt to a work table using a mechanical lift. On June 28, 2000 plaintiff injured himself while working. Hankins was taken to the hospital where the attending physician determined that he had re-injured a pre-existing hernia. The physician imposed a one-week restriction on lifting, carrying, pushing, and pulling. Aside from the restrictions, the physician released Hankins for work that same day. NK Parts accommodated Hankins' work restrictions.
On July 25, 2000 Hankins left the work place without following the proper procedures for requesting time off and as a result, NK parts terminated the placement. Hankins explained that he left in order to see his doctor but admitted to not following the proper procedures. Adecco immediately attempted to place Hankins in another position but Hankins refused the placement because it only paid $8 per hour. Adecco, to date, has not placed Hankins in another position.
Hankins filed a workers' compensation claim based on his injury at NK Parts. The claim was rejected since the injury was the result of a pre-existing injury. On December 8, 2000 Hankins filed suit, pro se, in the Court of Common Pleas, Shelby County alleging that Adecco had breached its contract with him when it failed to employ him at Honda for two years. He further alleged that Adecco and NK Parts terminated his employment in violation of the Family and Medical Leave Act (FMLA) and Ohio's Age Discrimination Statute, O.R.C 4112.17. Finally, Hankins alleged that NK Parts terminated his employment in retaliation for his filing a worker's compensation claim, a violation of R.C. 4123.90.
Appellees Adecco and NK Parts filed individual motions for summary judgment and on July 12, 2001 the trial court granted both motions in a joint order finding that Hankins failed to meet the prima facie case for action under the FMLA since he did not have a serious health condition. The trial court further held that Hankins did not suffer an adverse employment action and therefore could not meet the requirements of aprima facie case for age discrimination or worker's compensation retaliation. With respect to the breach of contract claim against Adecco, the trial court found that there was no contract for employment so therefore, no breach. Appellant, pro se, appeals the order granting summary judgment with respect to defendant Adecco.
Appellant presents the following assignment of error.
 I. The trial court erred in granting summary judgment to defendant Adecco in plaintiff's first cause of action by failing to assess the implicit and explicit terms of the MCP which is enforceable under the doctrine of promissory estoppel.
 II. The trial court erred in granting summary judgment to Defendant Adecco in plaintiff's second cause of action despite the manifest weight of the evidence of plaintiff's health condition and Adecco's negligent failure to comply with the requirements of the FMLA which violated federal law.
 III. The trial court erred in granting summary judgment to defendant Adecco in plaintiff's third cause of action by failing to correctly determine or define "adverse employment action" despite plaintiff's termination of employment in violation of ORC 4123.90, a clear public policy.
 IV. In plaintiff's fourth cause of action the trial court erred by granting summary judgment to defendant Adecco by failing to correctly determine or define "adverse employment action" despite plaintiff's termination of employment.
In considering an appeal from the granting of a summary judgment, we review the grant of the motion for summary judgment independently and do not give deference to the trial court's determination. Schuch v. Rogers
(1996), 113 Ohio App.3d 718, 720. Accordingly, we apply the same standard for summary judgment as did the trial court. MidwestSpecialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6,8.
Summary judgment is proper when, looking at the evidence as a whole (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679,686-687. To make this showing the initial burden lies with the movant to inform the trial court of the basis for the motion and identify those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
Once the movant has satisfied this initial burden, the burden shifts to the nonmovant to set forth specific facts, in the manner prescribed by Civ.R. 56(C), indicating that a genuine issue of material fact exists for trial. Id. at 293. The non-moving party is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66.
In his first assignment of error, Hankins alleges that the trial court erred in granting summary judgment to defendant-appellee Adecco in his breach of contract claim. Hankins advances two alternative theories for this assignment of error. First, Hankins alleges that there was an implied contract of employment between him and Adecco. Secondly, Hankins alleges that the terms of appellee's Manufacturing Career Program created an enforceable promise under the doctrine of promissory estoppel.
 1. Implied Contract
In his pro se brief, Hankins argues that a certain document entitled "Policy Enhancement Impact to MCP " constituted an implied contract for a two year placement within the MCP. We disagree.
In Ohio, absent a contract to the contrary, employment is terminable at will. Henkel v. Educational Research Council (1976), 45 Ohio St.2d 249. In Mers v. Dispatch Printing Co. (1985) 19 Ohio St.3d 100, 103 the Ohio State Supreme Court held that the employment at will doctrine could be occasionally penetrated in the interests of justice. "The facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge." Id at 104.
In the case at bar, the history between Hankins and Adecco and the circumstances of their employment relationship does not present any issues of material fact as to the existence of a contract for a guaranteed two year placement within the MCP, implied or otherwise. Hankins was aware that Adecco was a temporary employment agency and that placements with Adecco clients were by nature temporary. Hankins further knew that participation in the MCP did not guarantee a permanent position at Honda. The following provision found in the MCP policy manual clearly indicates that assignments are not guaranteed:
 If an assignment ends prior to 1460 hours due to no fault of the MCP associate or the MCP associate ends his/her assignment under good terms, he/she will be eligible for reassignment to another area and, providing that the break in assignment is less than 90 days, the hours will continue from the previous agreement.
 However, Hankins argues that this policy was amended when Adecco distributed a Policy Enhancement Memorandum on May 6, 1999. The memorandum is a chart designed to illustrate recent changes in the MCP. Specifically, Hankins points to the change in the length of the program from 8 months to 2 years and insists that this created an implied contract for employment.
It is unreasonable to assert that this memorandum, distributed to illustrate policy changes, contained an implied guarantee for a two year position in the program. Hankins knew that the previous policy of 8 months was not guaranteed and there was nothing in the memorandum that lends itself to the conclusion that the new term was now guaranteed.
 2. Promissory Estoppel
The second theory Hankins advances in his first assignment of error is that the terms of the MCP are enforceable under the doctrine of promissory estoppel.
Appellee Adecco argues that it is improper for the appellant to make a claim for promissory estoppel on appeal, having not done so in his complaint for relief. While we acknowledge that breach of contract and promissory estoppel are separate causes of action, pro se pleadings are held "to less stringent standards than formal pleadings drafted by lawyers. * * * " Haines v. Kerner (1972), 404 U.S. 519, 521. Whenever possible, pro se complaints and motions should be liberally construed and decided on the merits rather than dismissed on technicalities. SeeHillyer v. Roth (1995), 74 Ohio Misc.2d 127, 131; Karmasu v. Tate (Sept. 15, 1994), Scioto App. No. 94 CA 2217, unreported, citing DeHart v. AetnaLife Ins. Co. (1982), 69 Ohio St.2d 189. Based on these policies, and a review of the complaint, we will liberally construe Hankins complaint for relief as stating a claim for promissory estoppel.
In Talley v. Teamsters, Chauffeurs, Warehousemen, Helpers, LocalNo. 377 (1976), 48 Ohio St.2d 142, 146, the Supreme Court of Ohio adopted the doctrine of promissory estoppel as formulated within Section 90 of the Restatement of the Law 2d, Contracts. That section states in part:
 "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement of the Law 2d, Contracts (1981) 242, Section 90.
 To demonstrate promissory estoppel, a claimant must show the following elements: (1) a promise, clear and unambiguous in its terms; (2) reasonable and foreseeable reliance; and (3) injury resulting from the reliance. Cohen Co. v. Messina (1985), 24 Ohio App.3d 22, 26.
In Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100, paragraph three of the syllabus, the Supreme Court of Ohio held:
 "The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such case is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee."
 In the case at bar, the appellant lost his first position at Honda and soon thereafter Adecco placed him in a second. However, after one day on the job he went to Robert Smith, the on site Adecco representative, and told him that he couldn't do the job. Hankins explained the encounter at deposition:
 Q: What Specifically did you say to him [Smith] Hankins: And again, he reiterated, you know, not to worry about it, it was no big deal and that he would find another position and would have something available in a couple of days.
Q: What happened next?
 Hankins: So he instructed me to keep all Honda equipment, uniforms, scan card, bump cap, just basically keep everything and to contact him later in the week to see if he had any positions.
 In the absence of a "specific promise of continued employment," a promise of future benefits or opportunities does not support a promissory estoppel exception to the employment-at-will doctrine. Clark v. Collins Bus Corporation (2000), 136 Ohio App.3d 448
citing Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph two of the syllabus. Hankins claims that during his conversation with Smith, he was promised future employment in the MCP.
Smith's reassurances do not amount to a promise for future employment clear and unambiguous in its terms. Nor was it reasonable or foreseeable for Hankins to rely on Smith's statements as a promise for future employment. Smith, an Adecco employee, had no control over whether positions at Honda became open much less whether those positions would be suitable to Hankins. Hankins knew that Smith could not create a job for him and therefore knew that Smith could not guarantee that a position would become available. Hankins should have known that Smith was merely trying to offer positive reassurance at a time when Hankins was upset about his current situation.
Finally, Hankins can show no detrimental reliance on Smith's reassurances. Hankins asserts that Smith told him to stay in touch with him personally, thereby dissuading him from seeking employment elsewhere and from calling the Adecco branch office. This is not an injury resulting from reliance. Smith did not tell the appellant not to look for work, not to take a particular job, or not to call Adecco's regional office. Smith merely told Hankins check back later in the week to see if a position became available.
Hankins argues that the reliance on Smith's assurances resulted in his termination from the MCP. This argument is not well founded. It is illogical for Hankins to allege that he lost his position in the MCP because Smith told him he would call him when a position came open. Hankins was not terminated from the MCP. Hankins remains eligible to participate in the MCP through Adecco.
Hankins fails to meet the requirements of a prima facie case for promissory estoppel and therefore there is no issue of material fact and summary judgment for the appellee on this issue is proper.
Accordingly, appellant's first assignment of error is overruled.
 3. Family Medical Leave Act
In his second assignment of error, the appellant alleges that the trial court erred when it determined that Hankins did not suffer from a serious health condition as defined by the federal Family Medical Leave Act (FMLA). The appellant further alleges that regardless of the nature of his condition, Adecco had a duty to inform Hankins of his rights under the FMLA.
In his complaint for relief Hankins advanced two theories for recovery. First Hankins asserted that Adecco and NK Parts were negligent in their responsibility to enforce the FMLA. Secondly, Hankins claimed that he was fired in retaliation for exercising his rights under the FMLA. The trial court granted summary judgment on this issue based on Hankins' failure to show that his injury qualified him for protection under the FMLA. We agree with the trial court.
The FMLA was enacted on February 5, 1993. The FMLA entitles an "eligible employee" to take up to a total of 12 workweeks of unpaid leave during any 12-month period for, inter alia, when he or she is unable to work because of a serious health condition.
The FMLA, 29 U.S.C.S. § 2611 et seq., supplies the following definition of "serious health condition": an illness, injury, impairment, or physical or mental condition that involves — (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider. Olsenv. Ohio Edison Co., (1997) 979 F. Supp. 1159.
In the case at bar, Hankins can not demonstrate that he had a "serious health condition" because his work injury did not incapacitate him for more than three consecutive days. See Olson at 1165. On the day he was injured, Hankins was given permission to seek medical attention. The treating physician diagnosed Hankins with a hernia and released for him work that same day with restrictions. Adecco and NK Parts accommodated these restrictions and Hankins was able to fully perform his job. The only other work Hankins was required to miss was for small amounts of time necessary for doctors' appointments. As a result, Hankins' injury did not put him within the purview of the FMLA and summary judgment is proper as to this cause of action. Appellant's second assignment of error is overruled.
 4. Adverse Employment Action.
In his third assignment of error the appellant asserts that summary judgment was improper as to his claim for worker's compensation retaliation under O.R.C. 4123.90. In his fourth assignment of error appellant asserts that summary judgment was improper as to his claim under R.C. 4112.14, the Ohio Age Discrimination Act. Since both of these claims hinge on the existence of an adverse employment action, we will consider them together.
Both claims for workers' compensation retaliatory discharge and age discrimination require a showing of an adverse employment action. Specifically, they require discharge. See. O.R.C. 4123.90; O.R.C. 4112.14.
In the case at bar, Adecco did not discharge Hankins. Hankins chose to stop calling Adecco and requesting placement. While his file is currently listed as "inactive", he remains able to reactivate that file at anytime. Appellant attempts to show that Adecco had a duty to investigate the reasons NK Parts terminated his assignment. However, there was no such duty since Adecco's clients were permitted, by agreement, to terminate assignments at will. Therefore, there is no issue of material fact and summary judgment is proper as to both claims. Accordingly, appellant's third and fourth assignments of error are overruled.
For the reasons stated it is the order of this Court that the judgment of the Court of Common Pleas, Shelby County is affirmed.
SHAW and HADLEY, J.J., concur.