ATD CORPORATION, Plaintiff,

v.

**DAIMLERCHRYSLER CORPORATION,**
Defendant.

No. 02–72355.

United States District Court,
E.D. Michigan,
Southern Division.

April 25, 2003.

890

Michael J. Lavoie, Butzel Long, Detroit, MI, Mark I. Wallach, Tracy S. Johnson, Calfee, Halter, Cleveland, OH, for plaintiff.

James F.B. Daniels, Daniels & Kaplan, Birmingham, MI, for defendants.

---

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS I, II, III, IV, V, VI, VIII, IX, X AND XIII

OF THE COMPLAINT [1]

COHN, District Judge.

### I. Introduction

This is a commercial dispute. Plaintiff ATD Corporation (ATD) supplies parts to automobile manufactures that are used to package and ship automobiles and automobile parts. ATD is suing defendant DaimlerChrysler Corporation (DC) for its actions regarding the parties' business relationship in which ATD agreed to supply shipping racks [2] to DC. Although ATD makes thirteen claims against DC, it says that its "central claim" is that the parties had an "open-ended agreement [for DC] to purchase an aggregate of 1,000 shipping racks a week from ATD in exchange for ATD's expansion of manufacturing capacity and service as a 'long term' partner of DC."

Before the Court is DC's motion for judgment on the pleadings as to several of ATD's claims on the grounds that the claims are barred by the applicable statute of limitations and/or fail to state a claim upon which relief may be granted. For the reasons that follow, the motion will be granted in part and denied in part.

### II. Background

The material facts as gleaned from ATD's complaint follow.

#### A.

ATD is an Ohio corporation located in Vienna, Ohio. In 1993, ATD began supplying shipping racks to DC. In 1994, DC asked ATD to develop a plan to increase its manufacturing capacity of shipping racks from a sustained rate of 500 to 600 a week to 1,000 a week. In 1994 and 1995, DC and ATD worked to finalize a plan for ATD to expand its production capacity which included ATD's acquisition of a new manufacturing facility. In early 1995, ATD approached its banker, Key Bank, seeking financing for the new facility. On May 5, 1995, Key Bank wrote to ATD approving the financing contingent upon receipt of DC written promise to purchase 1,000 shipping racks a week on an ongoing basis. This letter was forwarded to DC. On June 21, 1995, DC wrote to ATD's financier,[3] confirming a "pre sourcing commitment with ATD" and stating that it "anticipated that approximately 1,000 shipping racks [would] be procured" from ATD and expressed its intent to "use ATD as a long-term partner for many future programs." ATD then financed, though Key Bank, the purchase of a new facility, known as the Vienna Plant; the financing was complete in August of 1995 and the plant was ready for production in May of 1996.

ATD says that DC never fulfilled its promise to purchase 1,000 shipping racks a week. From May of 1996 through year end, DC purchased only 15,446 shipping racks over 35 weeks, or approximately 441 a week. This amount was actually a decrease from DC prior purchases in 1995 of 23,089 shipping racks.

In 1997, DC also failed to purchase 1,000 shipping racks a week. Instead, DC purchased only 28,932 shipping racks, or approximately 556 a week.

On January 9, 1998, ATD sent a letter to DC reminding it of its promise to purchase 1,000 shipping racks a week and asked DC to honor this promise.

---

1. Although the Court originally scheduled this matter for hearing, upon review of the parties' papers, the Court finds that oral argument is not necessary. *See* E.D. Mich. LR 7.1(e)(2).

2. It is unclear what shipping racks are.

3. DC sent the letter to a David J. Schutter, Executive Vice President of Society National Bank. Apparently, Society National Bank and Key Bank are one and the same.

To date, ATD says that DC has not responded to the letter and has failed to fulfill its promise.

In addition to the above conduct, ATD says that DC has committed other wrongful acts for which it is also suing DC. These allegations are unrelated to the above "Vienna Plant" claims and include the following.

First, ATD says that DC refused to pay for 19 shipping racks which were ordered in January of 1996.

Second, in December 1997, DC unilaterally debited an ATD account receivable in the amount of $94,000.00. DC says the debit was taken to cover the cost to rework certain shipping racks that were nonconforming; ATD says the shipping racks conformed to the relevant specifications and says that DC never gave it the opportunity to rework the shipping racks. ATD also says that a design change was made which was never communicated to ATD.

Third, ATD says that DC wrongfully converted ATD's designs and specifications and wrongfully reserved ATD's manufacturing capacity. This claim pertains to DC's promise in April of 1999, to allow ATD to be a "pre-sourced" supplier for DC "2002 DR" program. In light of DC's promise, in September of 1999, ATD worked to finalize designs for shipping racks required by the "2002 DR" program and reserved manufacturing capacity to deliver the racks. ATD later shared those designs with DC. However, on or before December 8, 2000, DC informed ATD that it would have to participate in an online bidding process in order to win the shipping rack business for the "2002 DR" program.[4] As a result, ATD says it was awarded fewer shipping rack purchase orders than it had been "pre-sourced" for in 1999 and at lower prices.

Finally, ATD says that DC refused to pay ATD for design modifications called for by the "2002 DR" program. In August 2001, DC issued an initial purchase order in the amount of $569,844.47, covering a portion of the redesign costs, which was invoiced to ATD. DC later issued a second invoice in the amount of $8,556.75. At some point thereafter, DC stopped payment on the invoices and informed ATD that it elected to pay certain ATD suppliers directly for the redesign changes. On October 10, 2001, DC issued a "debit memo" to ATD in the amount of $709,971.86 for payments allegedly made to ATD creditors.

## B.

On January 7, 2002, ATD sued DC in the Northern District of Ohio. DC filed a motion to dismiss for improper venue on the grounds that venue was proper in the Eastern District of Michigan. ATD agreed to transfer under 28 U.S.C. § 1404(a) and an order of transfer was entered on June 10, 2002. On July 11, 2002, DC filed an answer and counterclaim. Thereafter, DC filed the instant motion for judgment on the pleadings as to Counts I., II., III, IV., V., VI, VIII., IX., X., and XII.; DC has not moved to dismiss counts VII, XI, or XII.

## C.

ATD makes the following claims against DC:

I. Promissory Estoppel—based on the Vienna Plant

II. Negligent/Fraudulent Misrepresentation—based on the Vienna Plant

---

4. In its papers, ATD says that DC "dumped" ATD and other "pre-source" suppliers "subsequent to its merger with its German parent."

III. Unjust Enrichment—based on the Vienna Plant

IV. Breach of Contract—based on the 19 shipping racks not paid for

V. Breach of Contract—based on the 1997 debit of $94,000.00

VI. Conversion—based on the 1997 debit of $94,000.00

VII. Breach of Contract—based on the "pre-source" commitment

VIII. Unjust Enrichment—based on the "pre-source" commitment

IX. Negligent/Fraudulent Misrepresentation—based on the "pre-source" commitment

X. Promissory Estoppel—based on the "pre-source" commitment

XI. Conversion—based on the "pre-source" commitment

XII. Breach of Contract—based on the redesign costs

XIII. Conversion—based on the 2001 debit for redesign costs

DC filed a counterclaim, alleging that ATD breached its duty to supply shipping racks under the "2002 DR" program by, inter alia, (1) failing to purchase components from ATD's own suppliers, (2) requiring DC to pay ATD's suppliers, (3) failing to timely deliver the shipping racks, (4) failing to properly design the shipping racks, (5) failing to adhere to quality requirements, (5) failing to make compliant shipping racks. DC has also asserted thirty-five affirmative defenses.[5]

### III. Judgment on the Pleadings

Fed.R.Civ.P. 12(c) provides that, "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Judgment may be granted under Rule 12(c) where the movants clearly establish that no material issue of fact remains to be resolved and that they are entitled to judg-

ment as a matter of law. *Beal v. Missouri Pacific R.R.*, 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941); 5 C. Wright & A. Miller, Federal Practice and Procedure (hereinafter Wright & Miller) § 1368, p. 518. All well-pleaded material allegations of the pleadings of the opposing party must be taken as true, while all contravening assertions in the movants' pleadings are taken as false. Given this standard, the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478 (6th Cir.1973); 5 Wright & Miller, § 1368, p. 520.

### IV. Analysis

#### A. Choice of Law

■ DC spends a good deal of time arguing what law, Michigan or Ohio, controls. As ATD points out, however, because this case was filed in Ohio, Ohio is the forum state and Ohio's procedural law, including its statute of limitations, applies. *See Martin v. Stokes*, 623 F.2d 469 (6th Cir.1980) (holding that where an action is transferred under 28 U.S.C. § 1404(a), the law of the transferor state applies.) In any event, it matters little whether Ohio or Michigan law is applied; the law of the two jurisdictions is essentially the same and yields the same result.

#### B.

The parties have presented their arguments in groups, *i.e.* first addressing the statute of limitations arguments then addressing whether the claims fail to state a claim. Due to the rather complicated way in which the motion papers read, the better course to separately analyze each claim and the arguments presented for dismissal

---

5. There is no doubt that both parties have cluttered the case with excessive claims and counterclaims. It appears the lawyers are being paid by the word rather than the hour.

of each claim. Although there may be some repetition, it is unavoidable.

### Count I—Promissory Estoppel—the Vienna Plant

In this claim, ATD says that DC promised to purchase 1,000 shipping racks a week from ATD. DC says that this claim is barred by the 4 year statute of limitations and fails to state a claim upon which relied may be granted.

#### 1. Statute of Limitations

■ As to the statute of limitations, DC says that ATD should have known at the latest by December 31, 1997 that DC was not going to purchase 1,000 shipping racks a week, as it had not purchased that many a week in either 1996 or 1997. Thus, the statute of limitations ran on December 31, 2001. Because ATD did not file its complaint until January 7, 2002, it is time barred.

ATD says that DC mischaracterizes its allegations. It alleges that the promise to purchase 1,000 shipping racks a week was open-ended and not limited to purchases in the years 1996 and 1997. On January 8, 1998, ATD wrote to DC asking it to fulfill its promise. Other than continuing to purchase shipping racks, DC did not respond to this letter. Because ATD says the promise was open-ended, it cannot be gleaned from the complaint when DC failed to fulfill its promise. The face of the complaint shows only that the earliest the statute of limitations began to run was January 8, 1998 when ATD sought assurances from DC. Because ATD filed within 4 years thereafter, the claim is timely.

■ ATD's position is well taken. Ohio applies a 4 year statute of limitations to promissory estoppel claims. *See* O.R.C. § 1302.98. A cause of action accrues when the non-breaching party discovers "the omission to perform as agreed." *Kotyk v. Rebovich,* 87 Ohio App.3d 116, 121, 621 N.E.2d 897 (1993). Taking ATD's allega-

tions as true, and given the nature of its promissory estoppel claim in Count I, the statute of limitation cannot be said to have run. At best, dismissal is premature at this point.

#### 2. Failure to state a claim

■ DC also argues that ATD has failed to make out a claim for promissory estoppel. DC says that ATD's best evidence of DC's promise consists of a letter DC sent to ATD's financier in June of 1995. This letter, however, does not declare that DC will in fact purchase 1,000 shipping racks from ATD and is at best "mere puffery " DC also argues that it is undisputed that the parties entered into express contracts, via purchase orders, for shipping racks during the same period that DC allegedly promised to purchase 1,000 shipping racks a week but did not. Where an express contract governs, a claim for promissory estoppel does not lie.

ATD responds that DC's argument that the letter from DC is not sufficient to form a promissory estoppel claim is simply an effort to obtain premature summary judgment on this claim. ATD also disputes the existence of a written contract, and therefore alternative pleading is permissible.

■ Again, ATD's arguments are well taken. To sufficiently plead a claim for promissory estoppel, a party must allege (1) the existence of a promise which is clear an unambiguous in its terms, (2) reasonable and foreseeable reliance, and (3) injury resulting from the reliance. *Cohen & Co. v. Messina,* 24 Ohio App.3d 22, 26, 492 N.E.2d 867 (1985). DC does not argue that ATD has failed to plead these elements, but rather argues that the claim lacks merit which is not an appropriate basis for dismissal. Moreover, because ATD denies that the purchase orders govern the promise, ATD is entitled to plead a quasi contract claim at this time. *See*

*Advanced Plastics Corp. v. White Consol. Indus.*, 828 F.Supp. 484 (E.D.Mich.1993).

### Count II—Negligent/Fraudulent Misrepresentation—Vienna Plant

ATD alleges that DC made negligent and fraudulent misrepresentations to it regarding DC purchase of 1,000 shipping racks a week. DC says that this claim is time barred and fails to state a claim upon which relief may be granted.

#### 1. Statute of limitations

■■ DC argues that ATD's claim accrued at the earliest on June 21, 1995 when DC allegedly provided the written promise that it would purchase 1,000 shipping racks a week from ATD. At the latest, the claim accrued in May of 1996 when ATD completed the expansion of its manufacturing facility in reliance on this representation. No discovery rule applies to a claim for negligent misrepresentation. Because ATD did not file within 4 years thereafter, this claim is time barred.

As to its fraud claim, DC argues, that the claim accrued at the latest on December 31, 1997 when after 20 months of not purchasing 1,000 shipping racks a week, ATD should have known of the fraud.

ATD argues there is Ohio law which says the discovery rule applies to claims of negligent misrepresentation such that the claim does not arise until damages are incurred. DC does not dispute that the discovery rule applies to claims based on fraudulent misrepresentation. As such, ATD argues that, like its promissory estoppel claim, it did not discovery DC's misrepresentation until after January 8, 1998 when it sent its letter to DC.

■ Both parties' positions have merit. The parties agree that claims for negligent misrepresentation and fraudulent misrepresentation are subject to a 4 year statute of limitations. *See* O.R.C. § 2305.09(D). As to ATD's claim for negligent misrepre-

sentation, it is clear that Ohio has not extended the "discovery rule" to actions sounding in negligent misrepresentation. *Orshoski v. Krieger*, 2001 WL 1388037, *6 (Ohio App. 6 Dist.2001). Accordingly, the statute begins to run on the date the misrepresentation was made. As DC notes, ATD's claim accrued at the latest in May of 1996 when ATD completed its expansion in reliance on the alleged misrepresentation.

Moreover, the case law cited by ATD to support its argument that the discovery rule applies is inapposite. *Chelsea Moore Dev. Corp. v. H.C. Nutting Co.*, 1985 WL 11490, 1985 Ohio App. LEXIS 8796 (1st Dist. Oct. 9, 1985) addressed the special situation of when the statute of limitations begins to run where the "wrongful conduct complained of is not presently harmful." In such a case, the cause of action does not accrue until actual damage occurs. In *Chelsea Moore*, the plaintiff claimed negligent misrepresentation by the defendant—a soil engineer—with regards to the suitability of the soil. Here, ATD does not argue that DC's conduct was not presently harmful. Moreover, *Collins v. Sofka*, 81 Ohio App. St.3d 506 (1989) addressed when a statute of limitations accrues in a wrongful death action, which is not the case here.

Thus, ATD's claim for negligent misrepresentation is time barred.

ATD's fraudulent misrepresentation claim, however, is not time barred for the same reasons as its promissory estoppel claim is not time barred.

#### 2. Failure to state a claim

■ Because ATD negligent misrepresentation claim is time barred, it is not necessary to address whether ATD had stated a viable claim. As to it claim for fraudulent misrepresentation, DC argues that a promise regarding the future cannot form the basis of a fraudulent misrepresentation claim. DC also argues that an

express contract—the purchase orders—govern the parties' conduct.

ATD says a promise regarding future conduct can form the basis of a fraudulent misrepresentation claim. ATD also argues that because it denies that there is an express contract, it can bring this claim.

 ATD's position is well taken. The elements of an action for fraudulent misrepresentation are: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 462 N.E.2d 407, (1984). Although "[m]ere predictions about the future are not actionable misrepresentations." *Link v. Leadworks Corp.*, 79 Ohio App.3d 735, 607 N.E.2d 1140 (1992), ATD is alleging more than mere predictions; it alleges that DC made an affirmative promise to purchase 1,000 shipping racks a week. Although DC argues that the promise was puffery, that issue must be left to be developed in discovery. DC has not argued that ATD failed to plea an element of fraudulent misrepresentation, but rather that the claim itself is weak, an argument more appropriate for summary judgment.

### Claim III—Unjust Enrichment—Vienna Plant

ATD says that DC was unjustly enriched by providing DC with the valuable service of adding to the volume of potential suppliers capable of delivering goods to Chrysler when it expanded its Vienna Plant. DC should have known that ATD would seek to recover its investment and

has been damaged by DC failure to purchase shipping racks at the rate promised. DC says this claim is time barred and fails to state a claim upon which relief may be granted.

#### 1. Statute of limitations

 DC argues that this claim, like ATD's promissory estoppel claim, accrued at the latest on December 31, 1997 when DC had not purchased the 1,000 shipping racks a week in 1996 or 1997. ATD again argues that because the promise was ongoing, the claim did not accrue until at least when ATD sent DC its letter requesting DC to honor its promise.

Again, this claim is not time barred for the same reasons that ATD's promissory estoppel claim is not time barred.

#### 2. Failure to state a claim

 DC argues that because the purchase orders control, ATD has no claim for unjust enrichment. ATD again argues that DC misunderstands the nature of its claim—ATD seeks recovery for DC wrongful retention of benefits beyond those for which the parties expressly contracted, i.e. beyond the purchase orders.

 The elements of an unjust enrichment claim are "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984). DC has not argued that ATD failed to plead these elements, but rather that the purchase orders control. ATD denies this and notes that its claim is based on allegations beyond the purchase orders. As plead, ATD's claim cannot be dismissed.

## Claim IV—Breach of Contact—
## 19 Shipping Racks

ATD says that DC breached their contract, for a discrete shipment, of shipping racks ordered in 1996. DC says this claim is also time barred although it does not provide a reasoned basis for its argument. ATD does not respond to this argument.

■■■■ It cannot be determined whether this claim is time barred. Although ATD alleges that it shipped 211 shipping racks to DC in January 1996, it does not allege when DC refused to pay for 19 of them. Breach of contract claims for the sale of goods are subject to a four year statute of limitations and that "[a] cause of action accrues when the breach occurs." *See* O.R.C. § 1302.98(B). Although ATD has plead that DC ordered the parts in January 1996, it has not plead the date when it learned that DC refused to pay for the 19 shipping racks, i.e. when it learned of the alleged breach. ATD must replead this claim with specificity before the Court can deal with it.

## Claim V—Breach of Contract—
## the 1997 Debit of $94,000.00

■■■ ATD alleges that DC has refused to pay it for shipping racks delivered to DC "pursuant to a number of purchase orders." DC argues this claim is time barred.

Again, it cannot be determined whether this claim is time barred. Although ATD says that in DC debited its account in December of 1997, it is not clear when ATD first learned of the debit. If it was in December of 1997, then the claim would be time barred. ATD must also replead this claim.

## Claim VI—Conversion—the
## 1997 Debit of $94,000.00

In this claim, ATD says that by identifying monies payable to ATD in satisfaction of obligations owed by DC, these monies belonged to ATD and title to these monies transferred to ATD with DC holding the money in trust. By not paying these monies to ATD, DC converted the funds for its own use. DC argues that this claim is time barred and fails to state a claim upon which relief may be granted.

### 1. Statute of limitations

■■■ DC argues that this claim is time barred because ATD learned of the wrongdoing in December of 1997, when its account was debited. ATD argues that although DC converted the funds in December of 1997, "[given that the allegations of the Complaint do not set forth when DC's wrongful conduct was discovered by ATD, this claim is likewise not subject to dismissal at this stage of the litigation]."

ATD's argument says it all. The statute of limitations for this claim is 4 years. See O.R.C. § 2305.09. Because ATD has not plead when it learned of DC's "wrongful act" it cannot be determined if this claim is time barred. However, because as discussed below, this claim fails to state a claim upon which relief may be granted, whether the statute of limitations expired is moot.

### 2. Failure to state a claim

■■■ DC argues that this claim fails because ATD cannot allege that DC "was entrusted with specific funds" which belonged to ATD and that DC breached its duty to transfer those funds to ATD. ATD says that it has plead all of the elements of a conversion claim.

DC's argument is well taken. Conversion has been defined as "a wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Zacchini v. Scripps–Howard Broadcasting Co.*, 47 Ohio St.2d 224, 226, 351 N.E.2d 454 (1976), reversed on other grounds (1977) 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965. "The

elements of a conversion cause of action are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." 18 American Jurisprudence 2d (1985) 146–147, Conversion, Section 2.

▆▆▆▆ In Ohio, an action for conversion of money will only lie "if identification is possible and there is an obligation to deliver the specific money in question." *Security Fed. S. & L. Assn. of Cleveland v. Keyes,* 1990 WL 93135 (Ohio App. June 29, 1990), unreported; 18 Ohio Jurisprudence 3d (1980) 484, Conversion and Replevin, Section 5. As one court has stated:

> An action alleging conversion of cash lies only where the money involved is "earmarked" or is specific money capable of identification, e.g., money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum. *Gray v. Liberty Nat. Life Ins. Co.* (Ala.1993), 623 So.2d 1156, 1160. Moreover, [a]n action will not lie for the conversion of a mere debt or chose in action. Consequently, where there is no obligation to return identical money, but only a relationship of debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor.

*Haul Transport of VA, Inc. v. Morgan,* 1995 WL 328995, *3–4 (Ohio App. 2 Dist. 1995) (citations omitted).

Here, ATD's conversion claim is based on nothing more than a creditor and debtor relationship. Taking all of ATD's allegations as true, it cannot be said that DC was obligated to earmark specific monies to pay ATD. DC could fulfill its obligations to ATD under the invoices by paying ATD *generally* and its failure to do so would be a breach of contract, not conversion. *See Haul Transport, supra* at *5. As such, this claim must be dismissed.

## Claim VII—Breach of Contract— "Pre–Source" Agreement

This claim is based on a "pre-source" commitment between DC and ATD to purchase shipping racks for the "2002 DR" program in agreed on quantities and at target prices. ATD says DC failed to follow though on its commitment.

DC has not moved to dismiss this claim.

## Claim VIII—Unjust Enrichment— "Pre–Source" Agreement

▆▆▆ ATD alleges that DC was unjustly enriched by inducing ATD to reserve manufacturing capacity for the "2002 DR" program and to prepare detailed plans and specifications, the latter of which DC used in an online bidding process. DC benefitted by not having to pay for the expense of preparing plans and specifications. ATD says it was harmed by not being able to recover the costs of the plans and specifications in its bid.

DC says this claim fails to state a claim upon which relief may be granted because a written contract controls. ATD says that this claim is based on allegations beyond the written contract, namely that DC received a benefit of *reduced supply costs* independent of the written contract.

As its other claim for unjust enrichment, this claim cannot be dismissed at this time because the allegations in the complaint which go beyond those for which the parties expressly agreed.

## Count IX—Negligent/Fraudulent Misrepresentation—"Pre–Source" Agreement

This claim is based on the misrepresentation that "that DC did not fulfill its

promise to purchase shipping racks at agreed on 'target prices.' "

 DC says this claim fails to state a claim because an express contract governs and for the same reasons that Count II of ATD's Complaint for negligent and fraudulent misrepresentation fails. ATD did not provide a discrete response as to this claim.

To the extent that ATD is pleading this claim as an alternative theory to its breach of contract claim (Count VII), it appears viable at this point.

### Count X—Promissory Estoppel— "Pre–Source" Agreement

This claim is based on the promise DC made which induced ATD into reserving manufacturing capacity and to invest and develop plans and specifications for the "2002 DR" program. It is essentially the same as the breach of contract claim in Count VII.

DC says this claim fails to state a claim upon which relief may be granted because ATD has plead a breach of contract claim covering the same conduct.

Given this early stage in the case, ATD is entitled to alternative pleading.

### Count XI—Conversion—"Pre– Source" Agreement

This claim is based not on the wrongful conversion of monies, but on the wrongful conversion of ATD's plans and specifications for the "2002 DR" program. ATD says that DC used the plans and specifications developed by ATD and furnished them to ATD's competitors in the online bidding process.

DC has not moved to dismiss this claim.

### Count XII—Breach of Contract—based on the costs of redesign

In this claim, ATD alleges that DC agreed to pay for design changes in shipping racks ordered under the "2002 DR" program, that ATD incurred $752,172.46 in design changes, that ATD asked DC to pay for $569,844.47 for the costs of the redesign, and DC has refused to pay.

DC has not moved to dismiss this claim.

### Count XIII -Conversion— the 2001 Debit

In this claim, ATD says that DC owed it $709.971.86 for shipping racks delivered to DC, that DC identified monies as owing to ATD, has refused to pay, and unlawfully converted those monies for its own use.

DC says this claim fails to state a claim upon which relief may be granted for the same reasons that ATD's conversion claim under Count VI fails. ATD puts forth the same arguments in response.

This claim fails and must be dismissed for the same reasons that Count VI must be dismissed.

### V. Conclusion

For the reasons stated above, DC's motion is GRANTED IN PART AND DENIED IN PART. The following claims are dismissed:

II. Negligent Misrepresentation— the Vienna Plant

VI. Conversion—the 1997 Debit of $94,000.00

XII. Conversion—the Redesign costs

The following claims continue:

I. Promissory Estoppel—the Vienna Plant

II. Fraudulent Misrepresentation— the Vienna Plant

III. Unjust Enrichment—the Vienna Plant

IV. Breach of Contract—19 shipping racks * this claim must be repled—may be time barred

V. Breach of Contract—the 1997 Debit of $94,000.00 * this claim must be repled—may be time barred

VII. Breach of Contract—the "pre-source" commitment

VIII. Unjust Enrichment—the "pre-source" commitment

IX. Negligent/Fraudulent Misrepresentation—the "pre-source" commitment

X. Promissory Estoppel—the "pre-source" commitment

XI. Conversion—the "pre-source" commitment

XII. Breach of Contract—the Redesign costs

ATD must file an Amended Complaint within 10 days consistent with this Order.

SO ORDERED.